CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *vs.* JARVIS
F. BURROUGHS AND OTHERS.

A policy of insurance on the life of a husband was made payable to the wife for her sole use, and in case of her death before his to be paid to her children; a statute authorizing a husband to effect such an insurance and protecting it from his creditors. The wife died before the husband. Before her death she made an absolute assignment of the policy for a valuable consideration. Held that her interest was contingent on her surviving her husband, and that after her death before his her interest was gone.

Whether the policy was assignable at all before the decease of the husband: *Quære.*

Where the assignee had paid an annual premium on the policy after the assignment, it was held that he was equitably entitled to a repayment from the fund of the money so paid.

BILL OF INTERPLEADER, brought by the petitioners, a life insurance company, to compel the respondents to contest between themselves and have adjudicated their respective claims to a sum of money due to one of them from the petitioners, on a policy of insurance on the life of George Kendall, deceased, in favor of his wife and children. The respondents were Jarvis F. Burroughs, who claimed the money due on the policy under an assignment of it from the wife of George Kendall before his death, and Henry S. Kendall, guardian of

the only child of George Kendall and wife, and Loren P. Waldo, administrator of the estate of Mary E. Kendall, the wife. The suit was brought to the superior court in Hartford county, and referred to a committee, by whom the following facts were found upon the petition and the answers of the several respondents.

The Connecticut Mutual Life Insurance Company, on the 8th day of November 1850, issued a policy of insurance on the life of George Kendall, of Providence, Rhode Island, in the sum of $5000, for the benefit of Mary E. Kendall his wife, the material part of which was as follows:—

"This policy of insurance witnesseth, that the Connecticut Mutual Life Insurance Company, in consideration of the sum of one hundred and fifty-two dollars and fifty cents, to them in hand paid by Mary E. Kendall, wife of George Kendall, of Providence, R. I., and of the annual premium of one hundred and fifty-two dollars and fifty cents to be paid on or before the 8th day of November, in every year during the continuance of this policy, do assure the life of George Kendall, of said Providence, for the sole use of the said Mary E. Kendall, in the amount of five thousand dollars for the term of the whole continuance of his life. And the said company do hereby promise and agree to and with the said assured, her executors, administrators and assigns, well and truly to pay or cause to be paid the said sum insured to the said assured, her executors, administrators or assigns, for her sole use, within ninety days after due notice and proof of the death of the said George Kendall, deducting therefrom all notes taken for premiums unpaid at that date. And in case of the death of the said Mary E. Kendall before the decease of the said George Kendall, the amount of said insurance shall be payable after her death to her children, for their use, or to their guardian if under age, ninety days after due notice and proof of the death of the said George Kendall as aforesaid."[*]

---

[*]The act of 1850, which authorizes and protects policies of this kind, is as follows:—

"Policies of insurance issued on the life of any person, expressed to be for the benefit of a married woman, whether the same be effected by herself or her hus-

On the 29th of August 1862 George Kendall was indebted, and had been for some time, to the respondent Jarvis F. Burroughs in the sum of $1870, and to one S. M. Waite in the sum of $1080. On that day Mrs. Kendall, in the absence of her husband, but with his knowledge and consent, in consideration of $250 then loaned to her by Burroughs and Waite, and of their agreement to loan her $775 more, promised them that she would assign the policy in question to Burroughs, first, for the payment of the loans made by them to her, secondly, for the payment of the above indebtedness of George Kendall to them, and, thirdly, for the payment of certain other debts due another party. Burroughs and Waite soon after advanced to her the $775, and, on the 1st day of September 1862, Mrs. Kendall executed a formal assignment of the policy, under seal, to Burroughs. Mrs. Kendall also promised, at the same time, to pay the premiums as they fell due on the policy and to keep it in force. The $775 was used by her to redeem certain other policies on the life of her husband which had been pledged for his debts.

Mrs. Kendall died on the 6th of October 1864, and George Kendall on the 10th of the same month. They left one child only, William H. Kendall, of whom the respondent Henry L. Kendall is legal guardian.

Burroughs and Waite had paid one premium on the policy, amounting to $109.74. The amount due on the policy when it became payable was $4,961.04. The amount due to Burroughs and Waite from Mrs. Kendall for the money loaned her, at the time of the report of the committee, was $1,324.58. The amount due to Burroughs on the indebtedness of George Kendall to him was $2,504.48; and that due to Waite $1,497.80.

band, or by any other person on her behalf, shall enure to her separate use and benefit, and that of her or her husband's children, if any, as may be expressed in said policies, independently of her husband and his creditors and representatives, and also independently of any other person effecting the same in her behalf, his creditors or representatives; but this section shall not apply to insurances where the annual premium on the policy shall exceed the sum of one hundred and fifty dollars, unless paid from the private property of the wife." Gen. Statutes, p. 304, sec. 26.

The charter of the petitioners contains a similar provision. 3 Private Acts of Conn., p. 645, sec. 8.

On these facts the case was reserved for the advice of this court.

*Robinson,* for the respondent Kendall.

1. Mrs. Kendall could not assign the interest of her children in the policy, and the assignment to Burroughs carries only an interest in the fund which was liable to defeat and which has been defeated. This would be true in ordinary contracts. General and earlier words are qualified by special and subsequent limitations. This principle will not be questioned. A gift by will to "*A. B.*, his heirs and assigns," would hardly be called absolute if it was subsequently limited to a trust estate. Mrs. Kendall's interest in the contract is liable to defeat, and an assignee can acquire no greater rights than hers. The assignee is fully apprised of the infirmity by the instrument itself. The contract is with a third person yet to be created. The natural guardians are to die, and a special guardian is to be appointed. Take the present popular form of insurance policy, the endowment policy payable at a fixed time ; let it run to *A. B.* upon the life of *C. D.*, and in case of *A. B.*'s death before the fixed time of payment, to *E. F.*, both having insurable interest in *C. D.* Can it be seriously claimed that *A. B.* can assign *E. F.*'s interest away? The phrase "her executors, administrators or assigns" gives no power of absolute alienation. It is simply a provision for her death after the death of her husband and before the contract time of payment. In the case at bar this period was nearly fifteen months, and it is in some cases much longer. Insurance companies are often puzzled to know who can legally discharge the policy, and this provision covers all the cases which can arise.

2. The contract of life insurance is peculiar, and especially favorable to the claim of this respondent. Policies beneficial to a wife are not like the ordinary choses in action of her separate estate. They are designed to keep in the family a pecuniary fund to supply the loss of the supporter of the household. Thus at common law, before the enactment of statutes and the granting of charters which explain the policy

in question and other modern policies beneficial to families, it has been held that a life policy for the benefit of a wife and her issue could not be reduced in its amount, even by a court of equity, although the husband and wife lived apart, had no issue, and were altogether unlikely to have any, and although the family was in want, simply on account of the rights of issue protected by the policy.    Ellis on Life Insurance, 199. But the policy in question cannot be absolutely aliened by the wife, because it is made under the charter of the company, which most clearly intends provision for the family of the husband and preservation of the fund entire for the benefit of children.    3 Private Acts, 645.    This charter alone enables married women to make such contracts.    The section is taken from the statutes of New York (1840), and has been substantially incorporated into our own public acts.    The provision is for the husband's family.    The policy is to be payable to her in case of her surviving her husband.    The policy "shall" be so payable and "may" be to her children in case of death.   "May" is used because wives may have no children and is to be construed "must" when there are children. Any other construction of the statute would open the door to abuse of the grossest kind.    If the assignee's claim is correct, then the wife can charge this fund at her pleasure, can make a donation of it, and can dispose of it by will, which is utterly inconsistent with the intent of the policy.    The courts hold that such disposition cannot be made.    *Moehring* v. *Mitchell,* 1 Barb. Ch., 272.    The language of the policy in that case is precisely like the one under discussion—"to her, her executors, administrators and assigns," "for her sole use;" but the court says: "There was no power reserved in the policy authorizing the wife to dispose of the insurance, by will or otherwise, in the event which occurred;" i. e., her not having survived her husband.    The phrase "executors &c.," is not intended as giving a power of absolute alienation, but is supplied by the company for the purpose above suggested.    This class of policies has received little discussion in court because of its modern birth, but the precise point was decided in 1862, in the Court of Appeals of the state of New York.    *Eadie* v.

*Slimmon*, 26 N. York, 9. This case has been universally accepted by life insurers as the true construction. The case is analogous to the one at bar, both in the phraseology of the policy and legislative authority to the companies.

3. The whole fund is payable to the child's guardian. Not even the premium advanced by the assignees can be recovered of the company; they are mere volunteers in their relation to us, and a volunteer obtains no lien upon the policy by paying the premium. *Burridge* v. *Row*, 1 Younge & Coll. Cha., 183. They have speculated upon the chances of the wife's surviving the husband, and have lost. Any other view than this one would corrupt the system of life insurance and change its very nature; would take it away from the guidance of Christian benevolence and make it a servant of fraud and an invitation to speculate and gamble upon the chances of most precious life.

*T. C. Perkins* and *McFarland*, for the respondent Burroughs.

1. Mrs. Kendall, having an insurable interest in the life of her husband, purchased of the petitioners a policy of insurance for $5000 on his life. For this she paid $152 for one year's premium, and in order to retain and continue the policy by its terms, she was bound to pay the same sum each succeeding year during his life. The contract of insurance was between her and the insurance company. In consideration of a sum of money paid by her, the company agree "to and with the said assured, her executors, &c., well and truly to pay or cause to be paid, the said sum insured to the said assured, her executors, administrators or assigns, for her sole use, within ninety days after due notice and proof of the death of the said George Kendall, deducting therefrom all notes from her for premiums unpaid at that date." The transaction briefly and in legal effect stated, amounts to this: Mrs. Kendall for a certain sum paid and a like sum to be paid annually during the life of her husband, purchased of the petitioners a promise to pay to her, her personal representatives or assigns, ninety days after her husband's decease, $5000. If

it were not for a subsequent clause in this policy of insurance it would seem impossible to raise even a question as to Mrs. Kendall's power to assign this agreement with the insurance company, with all the rights and liabilities incident to it, especially if it was done (as it was in this case) with the knowledge and approbation of her husband. There is no condition in the policy against an assignment. The consideration which imparted the breath of life to the contract moved from her, and the promise was to her. Nothing else could be done to vest in any person the sole and exclusive interest in the contract and power to transfer that interest. *Sailley* v. *Cleveland,* 10 Wend., 159; Barbour on Parties, 23; *Lawrence* v. *Fox,* 20 N. York, 268; *Treat* v. *Stanton,* 14 Conn., 445; *Clapp* v. *Lawton,* 31 id., 95.

2. But it is claimed that the subsequent clause in the policy disabled Mrs. Kendall, even with her husband's consent, from making any assignment of it. That clause is as follows:— "And in case of the death of the said Mary E. Kendall before the decease of the said George Kendall, the amount of said insurance shall be payable after her death to her children, for their use, or to their guardian if under age, ninety days after due notice and proof of the death of the said George Kendall as aforesaid." We shall endeavor to show, in the first place, that there is nothing in this clause that upon general principles of law would destroy or impair the right of transfer; and in the second place, that there is nothing in the statute laws of the state or the charter of this company that in any manner affects this right. (1.) The direction of Mrs. Kendall to pay the amount of the policy to her children in a certain event, and the agreement of the company to do so, embodied in the policy, is simply the indication of her purpose at that time to give the sum specified in the policy to them in case she died before her husband; and thus to leave it optional with them to pay the subsequent premiums and continue the policy, or to permit it to expire. (2.) The proposed disposition in favor of the children was not to take effect till after the decease of Mrs. Kendall, the mother, and was therefore strictly testamentary, and of course revocable by her at

pleasure. 1 Wms. Exrs., 90. (3.) But if we lay out of view the testamentary nature of this proposed disposition, and look at it from the only other point of view possible, then it must be held to be on her part an expressed but unexecuted intention to give this sum to her children in a certain event, and this intention she could abandon at pleasure, and make a different disposition of the fund. 1 Wms. Exrs., 90; 1 Parsons on Cont., 234; *Palmer* v. *Merrill*, 6 Cush., 282. This very contingent interest of the children under the policy might also at any time be destroyed by a failure to pay the premiums as they became due. As to any payment by the mother, Mrs. Kendall, their interests were thus destroyed at the end of the current year of the assignment, for she never paid any premiums after the assignment. The subsequent premiums were paid by the assignee. From that time he must in equity be treated as the assured in this policy,—as having the interest in it and as paying the premiums to preserve the policy for the protection of that interest. It is plain that but for the continuance in life of this policy by the assignee, it would have expired, and with it all the contingent interest of the children. But he continued it in life for his own benefit and to protect his own interest, not for the benefit of Mr. Kendall's children. Practically and in substance it is the same as though he had permitted this policy to expire and obtained a new one payable to himself, as he might have done. (4.) The object of the 8th section of the charter of this insurance company, which is a mere copy of the general statute in relation to the same subject, is simply to modify to some extent the statute against fraudulent conveyances. It does so by enabling any man, no matter what his pecuniary condition, to make a provision for his family by abstracting from his assets, to which his creditors might otherwise be entitled, a certain sum annually; but the law does not assume to limit the power of voluntary disposition. It is an enabling act, and prescribes what may be done, not what must be. If the assured desires to give that to a creditor which the creditor could not obtain by legal compulsion, the law does not prohibit it. (5.) It may be added that inasmuch as the annual

premium on this policy amounted to more than $150, and as it does not appear that the premium was paid from the separate estate of Mrs. Kendall, the policy was never within the statute, or the section of the charter above referred to.

CARPENTER, J. In 1850 the Connecticut Mutual Life Insurance Company issued a policy of insurance on the life of George Kendall for the sum of five thousand dollars, payable to his wife, Mary E. Kendall, " her executors, administrators or assigns, for her sole use, within ninety days after due notice and proof of the death of the said George Kendall, deducting therefrom all notes taken for premiums unpaid at that date." The policy then provided as follows:—"And in case of the death of the said Mary E. Kendall before the decease of the said George Kendall, the amount of said insurance shall be payable after her death to her children for their use, or to their guardians if under age," &c.

On the first day of September, 1862, Mary E. Kendall executed a paper, purporting to be an absolute assignment of said policy to Jarvis F. Burroughs. She died on the 6th day of October 1864, and her husband died on the 10th day of the same month, leaving one son. The insurance money is now claimed by the assignee on the one hand, and by the son of the assured on the other. The claim of the assignee must depend upon the validity of the assignment; for if the assignor, at the time of the assignment, had no assignable interest in the policy, or if she had an assignable interest which was contingent merely, and that interest has been defeated by the happening of her death before that of her husband, it seems quite clear that the assignee has no valid claim to the fund in question.

In the case of *Eadie* v. *Slimmon*, 26 N. York, 9, a policy was issued to a married woman on the life of her husband, similar in its provisions to the one now under consideration. The statute of New York on this subject is substantially like our own. She assigned the policy during the life-time of her husband and survived him. In a suit to which she was a party, the court held that the instrument had no assignable

quality. If we are to adopt the doctrine of that case as the law of this state, it conclusively settles the question now before us. For the reasoning of the court seems to go so far as to hold that a policy of this description, prior to the decease of the husband, is absolutely and under all circumstances unassignable by the wife. That such should be the law applicable to a policy the premiums on which were paid by the husband, certainly seems reasonable and just; while on the other hand, if the wife paid the premiums from her own separate estate, it is difficult to suggest a reason why she should not have the same power to assign her interest in the policy that she has to assign any other chose in action belonging to her. But in one respect that case is distinguishable from this. There, the contingent interest of the wife became absolute by the death of the husband during her life; here, that interest was defeated by her death during the life-time of the husband. This distinction renders it unnecessary for us to determine the principal question involved in that case. For if it be conceded, on the one hand, that Mrs. Kendall had an assignable interest in the policy in question, it must be conceded on the other hand that that interest was a contingent one, and that the contingency upon which it was to become absolute never has happened and never can happen.

By a reference to the policy it will be seen that it was payable to her only in case she survived her husband; and in case her husband survived her it is expressly provided that the policy shall be payable to the children. By the terms of the policy the mother's interest ceased and the child's interest, which before was contingent, became fixed and certain by the death of the mother before that of the father. Unless therefore the assignee took a greater interest than the assignor had in the policy, the rights of the assignee terminated on the death of the assignor.

But it is suggested that the clause in the policy making it payable to the children, "is simply the indication of her purpose at that time to give the sum specified in the policy to them in case she deceased before her husband;" and again, that "it must be held to be on her part an expressed but un-

executed intention to give this sum to the children," which purpose she could abandon at pleasure, and make a different disposition of the fund. This argument is ingenious but not sound. The intention was not to give a sum of money to these children, but to make a life policy, in a certain event, payable to them. The intention was not only expressed but executed. The contract was complete, and the money, when due, was payable to the children without any further act on her part.

But we do not regard the transaction as a gift. The charter of the company and the statute law required the policy to be made as it was, in order to protect it from the claims of creditors and the representatives of the husband. The object of the legislature was to authorize a reasonable provision to be made for the family of the husband ; for the widow, if living, if not, for the children. Mrs. Kendall, when she purchased this policy, undoubtedly intended to secure the benefits of this statute not only for herself, in case she survived her husband, but for her children in case she did not, and to that end caused the policy to be made payable according to the requirements of the statute. Having done so, and the contract relations between the company and the children having thereby become fixed, it was not in her power to defeat the purpose of the legislature in respect to the children, and the manifest intention of the parties to the contract, by an assignment of the policy during the life of the husband. In addition to this it may be observed, that there was at least a moral obligation resting upon her to make this provision for her children. In doing so we must regard her, not as indicating a purpose to bestow a gift, but as discharging a moral, if not a legal duty.

Nor is there any force in the suggestion that the instrument is testamentary in its nature, and therefore revocable. It is not a will, but a contract, authorized and regulated by statute ; and when once entered into, it is no more revocable than a promissory note would be, which was made payable to the children after the death of the mother.

But it seems that the assignee paid one premium on this

policy, amounting to $109.74.   We think it equitable that the
money thus paid should be refunded.   The superior court is
therefore advised that the assignee is entitled to the sum paid
for premium, together with the interest thereon from the date
of payment, and that the balance of the fund should be paid
over to the guardian of the son.

In this opinion the other judges concurred.