De Ronge *vs.* Elliott and The Mutual Benefit Life Insurance Company.

1. An assignment executed by the husband and wife, of a policy of insurance on the life of the husband in favor of the wife, and given as collateral security for the husband's indebtedness then existing, is a valid assignment.

2. Knowledge by the wife that her husband was in great difficulty arising out of his indebtedness and of the pendency of suits against him, it appearing that the motive to the execution of the assignment by her was the benefit to her husband by the security thus afforded to his creditor, will not invalidate the assignment on the ground of duress.

3. An assignment by the husband and wife of her reversionary choses in action, passes an interest therein *sub modo*, to become effectual only in the event of the husband and wife living long enough to enable the assignee to reduce the chose in action into possession.

4. Such assignment having no effect against the wife's right by survivorship unless the chose in action is reduced into possession, it will be

De Ronge v. Elliott.

void when the fund cannot fall into possession during his life, as where it is expressly limited to the wife in the event of surviving him.

5. The reversionary interest secured to the wife by a policy of insurance on the life of her husband, is her sole and separate property, under the fourth section of the Insurance Company's charter, and the act for the better securing the property of married women. And she has, therefore, the policy being an obligation to pay money to the wife after her husband's death, the power to assign it. Nor is it material that her interest is contingent on her surviving her husband. In that case the assignee would take it; otherwise, the children living at the husband's death.

6. That the fund created by a policy of insurance on the life of a husband, for the benefit of the wife, was created for the particular purpose of providing for the widow and family of the insured at his death, does not invalidate an assignment of such policy, made to secure the husband's indebtedness. The general act in respect to such policies did not intend to restrict them to that particular purpose, and expressly exempts them from the claims of the husband's creditors, only when the annual premium does not exceed $100.

7. By the law of New Jersey, a life insurance policy was not prohibited as a wager policy, or condemned by general principles of expediency and morality. Before the statutory enactments with regard to such policies, they were held to be not contracts to indemnify against loss, but to pay a given sum upon the happening of a given event.

---

Motion to dissolve injunction. Argued before the Vice-Chancellor on bill, answer, and agreed statement of facts.

*Mr. T. Runyon,* for motion.

*Mr. J. Whitehead,* contra.

THE VICE-CHANCELLOR.

A policy of insurance for $10,000 on the life of Louis De Ronge, was issued March 5th, 1851, to Josephine his wife, by the Mutual Benefit Life Insurance Company. The premium, payable on the 5th of March in every year during the continuance of the policy, was $243. In consideration of the payment of these premiums, the company agreed to pay to the said Josephine the sum of $10,000 within ninety days after notice and proof of the death of the said Louis,

and in case the said Josephine should die before the decease of the said Louis, to pay the amount of such insurance to their children ; and in case she should die without leaving issue, to pay the same to his heirs.

In June, 1871, the policy was assigned by the said Josephine and Louis to George A. Elliott as security for the payment of a large indebtedness then existing and lately created from Louis De Ronge to Elliott. The assignment was under seal, signed by herself and husband, and was delivered with the policy to the assignee. In the following month of November Louis De Ronge died, and the company, having been duly notified of such decease, was about to pay over to the assignee the amount due on the policy, when the complainant filed her bill, and an injunction was issued restraining such payment. The defendant Elliott has answered, and the cause has been argued upon its general merits on this motion to dissolve, there being no further evidence on either side to elucidate the case.

The question made by the pleadings and evidence relates solely to the validity of the assignment. The complainant insists that the assignment was illegal and invalid, and passed nothing to the defendant, for the following reasons :

*First.* Because the assignment was procured from the complainant under circumstances which amounted to duress.

The facts in regard to the execution of the paper are not disputed. De Ronge was indebted individually to Elliott, as was also the firm to which he belonged. In February preceding, suits had been commenced against him and against his firm, in one of which he had been held to bail. These suits were pending in June, when, at her husband's request, the complainant assigned the policy. Her statement is that she was not then aware that her husband had been arrested ; she was aware that he was in great difficulty, arising out of his indebtedness to Elliott. She says he was in great distress of mind when he desired her to execute the assignment, and that to relieve him she did it. She says that she did not read it, and that it was not read to her, but she under-

De Ronge *v.* Elliott.

stood it to give Mr. Elliott the benefit of the policy as collateral security for the indebtedness from her husband. She does not deny that its contents and effect were explained to her, but on the contrary it appears that they were. She went from her residence in Milburn, New Jersey, to the city of New York with her husband, for the purpose of executing the paper, and understood what she was doing. She alleges no coercion, and none appears. She acted freely, influenced by a desire to relieve her husband and promote his interests. She received nothing for the assignment in the shape of money, but looked solely to the fact that her husband would be benefited by the security thus afforded to his creditor. I can discover nothing like duress in the transaction thus stated, and must regard this objection as entirely unsupported by the proofs.

As a second reason why the assignment is invalid, it is said that the fund secured by the policy was not capable of being transferred by a married woman, even with the consent of her husband, because the fund itself, not being payable in the lifetime of the husband, is a reversionary interest belonging to the wife which cannot lawfully be transferred by the husband and wife so as to bar her right by survivorship.

The effect of an assignment by the husband, with the wife's consent, of her reversionary choses in action, was held in *Hornsby* v. *Lee,* 2 *Madd.* 16, adversely to the doctrine on that point which seems to have been previously entertained. It was again similarly held and established in *Purdew* v. *Jackson,* 1 *Russell* 1, and the doctrine became settled, that in the case of reversionary rights, the assignment passed an interest in the chose in action *sub modo,* to become effectual only in the event of the husband and wife living long enough to enable the assignee to reduce the chose in action into possession.

As the husband's assignment has no effect against the wife's right by survivorship unless the chose in action is reduced into possession in his life, it follows that his assignment will be void when the fund cannot fall into possession

during his life, as where it is expressly limited to the wife in the event of her surviving him. *Bright's Husband and Wife, Vol. I,* 87 ; *Richards* v. *Chambers,* 10 *Ves.* 580.

But the above principle is inapplicable to the present case, because the reversionary interest secured to her by the policy is her sole and separate property. It is made so by the fourth section of the act incorporating the company by whom the policy was issued, which act was approved January 31st, 1845, and also by the second section of the act for the better securing the property of married women, approved March 25th, 1852. To the separate estate of the wife the husband could not, before the last named act, assert the title which belonged to him in respect to her personal property in general, whether in possession or otherwise, and the wife had the power to dispose of such separate estate as if she were unmarried. This power of disposition belonged to her as well in case of her reversionary property as of property reducible to possession. *Bright on Husband and Wife, Vol. II, pp.* 220, 221, 222 ; 2 *Story's Eq.,* §§ 1389, 1390, 1393, 1394.

The operation of the above act of 1852 in enabling married women to dispose of their separate personal estate, though not of their real estate, is recognized in *Naylor* v. *Field,* 5 *Dutcher* 287. Where once a wife is permitted to take personal property to her own use as a feme sole, she must take it with all its privileges and incidents, one of which is the *jus disponendi.* 5 *Dutcher* 288, and cases there cited.

Regarding this policy, therefore, as an obligation to pay money to the wife after her husband's death, although it be considered a reversionary chose in action, she has the power to assign it, because she holds her interest in it to her sole and separate use. Nor is it material that her interest is contingent on her surviving her husband. In that case the assignee would take ; otherwise not, but the fund would go to the children, if any, living at the husband's death.

But it is said, thirdly, that the policy is not assignable, because the fund was created for the particular purpose of

providing for the widow and family of De Ronge at his death. This objection is based upon the notion that a policy of this description is authorized only by the statute, and without the statute would be void; that, being authorized with exclusive reference to the widow and family, it must be restricted to this purpose, and cannot be diverted from it. But this notion is a mistaken one. The legislative enactments on this point are the fourth and fifth sections of the company's charter, referred to above, and "an act in respect to insurance for lives for the benefit of married women," approved February 19th, 1851. *Nix. Dig.* (*4th ed.*) 548. The latter statute is in the same words with the fourth and fifth sections of the charter, and differs only in extending its operation to cases where the annual premium does not exceed $100, while in the charter the limited amount is $300.

The statute is as follows: 1. "It shall be lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured for her sole use the life of her husband, for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband or his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed $100. 2. In case of the death of the wife before the decease of her husband, the amount of the insurance may be made payable after the death to her children, for their use, and to their guardian if under age."

The object of these enactments was not to give validity to a policy contract, which was previously unlawful; or, in other words, to save a policy to the wife on the life of her husband from being bad, as a wager policy, prohibited by the statute against gaming, or condemned by the general principles of expediency and morality. By the law of New Jersey, a life insurance policy was not so prohibited or con-

demned at the time of the above enactments. The law upon this subject, as it stood before these enactments were made, is discussed and declared in *Trenton Mutual Life and Fire Insurance Company* v. *Johnson*, 4 *Zab.* 576. The policy contract was in that case held to be, not a contract to indemnify against loss, but a contract to pay a given sum upon the happening of a given event. Whether a pecuniary loss resulted or not to the policy holder from the happening of this event, was not material. There can be no doubt that in this state a wife, before the above enactments of 1851, could hold a policy on the life of her husband, and enforce the same at his death, without question as to insurable interest or pecuniary damage. The object of the enactment simply was to secure the policy to her sole and separate use, and to prevent the fund from being taken by his creditors, or those administering his estate. In the present case the premiums are admitted to have been paid by the husband, but they were less than $300 each, and it is not perceived how, as between the parties to this suit, any point on this subject can be raised. The state of the law in New Jersey, as above explained, divests of all force or applicability to this suit, the case of *Eadie* v. *Slimmon*, 26 *N. Y.* 9, on which the complainant here relies. The decision of the Court of Appeals in that case was put by the Chief Justice, on the ground that by the common law, if one desired to insure the life of another, he could only insure the interest which he had in such other life; and that if he undertook to insure a gross sum, and the contract was not susceptible of a construction which would limit the recovery to the actual damages sustained, the contract would be void, under the statutes against betting and gaming, and that this principle of the common law, by a statute of New York, was released in respect to insurance effected by a married woman. The common law principle must be admitted, I think, to have been inadvertently mis-stated by the learned judge in that case, as clearly appears by the opinion of Judge Elmer in the case of Trenton Life Insurance Company v. Johnson, referred to above.

Under the authority and reasonings of the latter case, and in view of what I conceive to be the further sanction of the case of *Landrum* v. *Knowles*, 7 *C. E. Green* 594, I am clearly of opinion that the third objection taken by the complainant in the present suit cannot be maintained. In Landrum *v.* Knowles, the policy held by the married woman was for the benefit of her children, and after payment by her of several premiums, was assigned by her to Knowles, who continued paying premiums till the husband died. The decree of the Chancellor, affirmed on appeal, gave to the children the reserve or accumulated fund belonging to the policy at the time it was assigned, and gave the balance secured by the policy to the assignee. The assignability of the policy was assailed by the appellants, but supported by the court, and to some extent that case is an authority applicable to this, though the payment of premiums by the assignee was a circumstance there not to be overlooked, and distinguishes so far that case from this. But the power of the married woman to assign and to divert the fund from the family of the husband, was affirmed. The assignability there recognized, cannot be ascribed to the fact of payment by the assignee of premiums subsequently due. The fund secured by the policy was decreed to be divided between the children for whose benefit it was taken out by the mother, and the assignee to whom the mother transferred it, and this division proceeded on the ground that the premium paid by the mother, had vested an interest in the children which the court would protect. To that degree the assignability was denied, for the reason that the mother was pro tanto their trustee, and ought, as far as practicable, to be incapable of disposing of their rights. But the division recognized and approved the assignable nature of the insurance contract, then remaining to be performed. It gave to the assignee, not the amount of the moneys paid by him for premiums, with interest, but the insurance fund which his payments had purchased. Had the opinion of the Chancellor, or of the appellate court, been adverse to the assignable nature of the

policy, the equities of the case would have been met, and the assignee's equitable rights preserved by a decree refunding his advances. This would have lessened his proportion of the fund, and would support the view contended for in the case now in hand. But the decree actually made, is consistent only with the view that the mother could dispose of the insurance contract itself.

I cannot, therefore, regard the case of Eadie v. Slimmon as entitled to govern here. The contract in this case was made in this state, and must follow our laws. But it is further to be said, that the adjudications of other states are in conflict with the decision in Eadie v. Slimmon.

In *Connecticut Mutual Life Insurance Company* v. *Burroughs*, 34 *Conn.* 305, the assignee's right was denied because the married woman who assigned died before her husband, and under the statute of that state similar to ours, and under a similar provision in the policy, the fund was payable to the children in the event of her death prior to the husband's. But the principles of Eadie v. Slimmon were not concurred in, and the assignability of the policy was recognized rather than denied, though of course dependent for effect on the survivorship of the wife.

In *Knickerbocker Life Insurance Company* v. *Weitz*, 99 *Mass.* 157, the wife who assigned died before her husband, and the assignee did not recover. The provisions of the policy seem to have been the same on this point with the provisions of the policy here, and it was held that if the assignment of the wife passed anything, it was at most her own interest, which ended with her death.

In *Pomeroy* v. *Manhattan Life Insurance Company*, 40 *Ill.* 398, a married woman assigned $600 of her policy of $5000 to secure a debt of her husband, and it was held that the policy being her separate property, she could pledge it, or part of it, as security for her husband's debt, and the assignment was valid in equity, independently of the statute.

In *Emerick* v. *Coakley*, 35 *Maryland R.* 188, decided in 1872, the case of Eadie v. Slimmon was dissented from, and that of

Pomeroy v. Manhattan Insurance Company approved. The assignment by the wife of a policy on her husband's life for her sole and separate use, was held valid in the hands of the husband's creditors to whom the assignment was made. The forbearance of such creditors, and the giving time for payment to the husband, was held a valid consideration for an assignment by the wife. The same doctrine is enforced in *Charter Oak Life Insurance Company* v. *Brant*, 47 *Mo.* 419, and in *Baker* v. *Young*, 47 *Mo.* 453.

My opinion is that upon authority and principle, the assignment in the present case must be sustained. It can make no important difference in favor of the complainant here that the insurance is not expressed to be payable to her assigns. The policy is a writing obligatory for the payment of money, and may be assigned at law, as well as in equity, without the word assigns.

I shall advise an order that the injunction be dissolved.