THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY *vs.* SYLVESTER C. DUNHAM, ADMINISTRATOR, AND ANOTHER.

A husband procured a policy on his life, payable to his wife for her sole use, or in case of her death before his, to their children, the charter of the insurance company providing for such insurance and protecting the interests of the beneficiaries. The policy was issued to the wife and delivered to and kept by her. She obtained a divorce from him seven years after, and afterwards, without his knowledge, surrendered the policy to the company and took a paid-up policy, conforming in all respects to the original one. The husband had paid the annual premiums, except .the one next preceding the divorce, which was paid by her. There were no children. She soon after died, and a little later he also. Held that her representatives and not his were entitled to the insurance money.

The paid-up policy required an annual payment of interest on certain premium notes. The wife paid this interest till her death, and the next payment, the only later one before the husband's death, was made by him. Held that his representatives were entitled to repayment from the money received, of the interest so paid.

BILL OF INTERPLEADER, brought to the Superior Court in Hartford County. The respondents were Sylvester C. Dunham, administrator of the estate of Lydia S. Reynolds, and Ira Babcock, executor of Charles McCammon, who severally claimed the money due on a policy of insurance issued by the petitioners upon the life of said Charles McCammon. The respondents filed answers, and the following facts were found upon the bill and answers by the court:

On the 15th of January, 1867, Charles McCammon applied to the petitioners for a policy of insurance upon his own life, for the benefit of his then wife, Lydia S. McCammon. On the 18th the petitioners wrote an ordinary policy upon his life, in manner following:

"This policy of assurance witnesseth that the Phœnix Mutual Life Insurance Company, in consideration of the representations made to them in the application for this policy, and of the sum of two hundred thirteen dollars and three cents to them in hand paid by Lydia S. McCammon, and of the annual premium of two hundred thirteen dollars and three cents, to be paid on or before the 18th day of January in every year during the continuance of this policy, do assure the life of Charles McCammon, of Albany, in the state of New York, for the sole and separate use and benefit of the said Lydia S. McCammon, in the amount of twenty-five hundred dollars, for the term of his natural life. And the said company do hereby promise and agree to and with the said assured, well and truly to pay or cause to be paid the sum insured to the said Lydia S. McCammon, for her sole and separate use and benefit, within ninety days after due notice and proof of interest (if assigned or held as security), and of the death of the said Charles McCammon, deducting therefrom all indebtedness of the party to the company. And in case of the death of the said Lydia S. McCammon before the decease of the said Charles McCammon, the amount of the said insurance shall be payable to their children for their use, or to their guardian, if under age, within ninety days after due notice and proof of the death of the said assured as aforesaid."

The rest of the policy is immaterial to the controversy.

The several premiums on the policy, up to and including that of January 18th, 1873, were paid by Charles McCammon. The premium due January 18th, 1874, was paid by Mrs. McCammon.

On the 15th of August, 1874, Mrs. McCammon obtained a lawful divorce from Mr. McCammon. In October, 1874, she married Monroe E. Reynolds.

On the 12th of January, 1875, Mr. and Mrs. Reynolds, without the consent or knowledge of Charles McCammon, surrendered the policy to the petitioners, and the company delivered to her a paid-up policy in lieu of the original policy, of the form following:

"No. 86,627. Paid-up policy in lieu of 18,610, of January 18th, 1867, $1,280. This policy of insurance witnesseth, that the Phœnix Mutual Life Insurance Company, in consideration of the representations made to them in the application for this policy, and of the sum of twelve hundred and eighty dollars, to them duly paid by Mrs. Lydia S. McCammon, wife of Charles McCammon, and of the annual payment of interest on four notes on or before the 12th day of January in every year during the continuance of the policy, do assure the life of the said Charles McCammon for the sole use of his said wife, in the amount of twelve hundred and eighty dollars, for the term of his natural life. And the said company do hereby promise and agree to pay the amount of the said insurance at their office in the city of Hartford, to the said assured for her sole use if living, in conformity with the statute, and if not living, to their children or their guardian for their use, in ninety days after due notice and proof of the death of the said party whose life is hereby insured, any indebtedness to the company on account of this policy being first deducted therefrom."

The policy was surrendered and the new one issued at the home office in Hartford to Mrs. Reynolds, who retained it until her death, and it has since been held by her estate.

At the time of issuing the paid-up policy, Mrs. McCammon. paid the interest called for by the policy, $29.68. On the 12th of January, 1876, she paid the interest then due, $25.76, and received the renewal receipt continuing the policy in force until the 12th of January, 1877. On the 29th of December, 1876, Ira Babcock remitted a draft on Charles McCammon's account, and at his request, to the Albany office for $24.50, being the amount to become due on the approaching 12th of January, and Charles McCammon received the renewal receipt continuing it in force another year. On the 10th of

January, 1877, Mrs. Reynolds' husband, who was her administrator in New Jersey, not knowing that the interest payment had been made by Charles McCammon, offered to pay the interest to be due on the 12th, and on finding that it had been paid, made legal tender of the amount to be due on the 12th, and demanded a renewal receipt.

Lydia S. Reynolds died on the 11th day of February, 1876. Charles McCammon died on the 7th day of March, 1877. Neither ever had any children.

The possession of both policies and of all the premium receipts, excepting the one for 1877, was in Mrs. Reynolds during her life, and in her representative after her death.

Upon these facts the case was reserved for the advice of this court.

*E. Goodman,* stated the case for the petitioners.

*C. E. Perkins,* for the respondent Babcock.

. The petitioners ask this court to decide which of the respondents is entitled to the amount of the insurance on the life of Charles McCammon. The facts are very few. Mr. McCammon insured his own life, with a provision that the amount was payable to *his wife, Lydia McCammon,* (no mention of her representatives or assigns being made,) if she survived him; if she did not, then the amount to go to their children; but no provision was made if they had no children. The insured paid the premiums regularly until 1874, when Mrs. McCammon obtained a divorce from him and married another man. In 1875 she surrendered this policy, which it appears she had carried away with her, and took out a new paid-up policy, payable in the same manner. After this she paid one premium and some interest, and died in 1876. Mr. McCammon made one payment of interest after her death, and then he died. Neither left any children. The question is, whether the estate of Charles McCammon, the insured, shall have the amount of the policy, or whether it shall go to the second husband of Mrs. McCammon. It seems a little curious that McCammon should have been paying premiums on his own

life for the benefit of his wife's second husband. Certainly no such intention existed in the minds of any of the parties to the contract. There is no reason or justice in it, and the court will not so hold unless obliged to do so by some very clear rule of law. The law, however, is clearly the other way. We suppose it to be well settled that if McCammon insured his life, payable to his wife if she survived him, and she died before him, the policy would, by her death, become payable to him. It is held distinctly in *Conn. Mut. Life Ins. Co.* v. *Burroughs*, 34 Conn., 305, that the interest of the wife is only a contingent one, and if she dies before her husband she never has any interest. On page 314 the court says, speaking of another decision: "There the contingent interest of the wife became absolute by the death of her husband during her life; *here that interest was defeated* by her death during the lifetime of her husband. This distinction renders it unnecessary for us to determine the principal question involved in that case. For if it be conceded on the one hand that Mrs. Kendall had an assignable interest in the policy in question, it must be conceded on the other hand that that interest was a contingent one, *and that the contingency upon which it was to become absolute never has happened and never can happen.*" See also *Chapin* v. *Fellowes*, 36 Conn., 132. This must be the law. It will not be denied that if I obtain insurance on my own life, my estate can recover the amount even though the policy is not in terms payable to me or my representatives. If it is made payable to another *if he survives me*, and he dies before me, that clause becomes inoperative, and the policy is still payable to me as if that clause were not contained in it. This is only applying to policies the same rules of construction applicable to deeds, wills, and other contracts. *Gambs* v. *Covenant Mut. Life Ins. Co.*, 50 Misso., 44; *Kerman* v. *Howard*, 23 Wis., 108; *Mut. Benefit Life Ins. Co.* v. *Atwood's Admx.*, 24 Gratt., 497. This is substantially the case of a lapsed legacy, where if the legatee dies before the testator, the legacy goes back to the estate; or it may be regarded as a trust made by the husband for the benefit of the wife if she survived him, and if not for

their children, if any.  If the *cestuis que trust* all die, the property would revert to him.·  The provisions of the statute of 1850, applicable to insurances for the benefit of married women, do not apply to this case, because the premium was more than $150.  Nor do the subsequent statutes affect the rights of the parties, because they were not existing when the contract was made.  But if these statutes apply, the construction of the contract will be what we claim it.  The object of these policies is to provide for the family of the deceased, and not for some other family.  In *Continental Life Ins. Co.* v. *Palmer*, 42 Conn., 60, the court held that the avails of such a policy, if not affected by any statute, are substantially to be disposed of like intestate estate of the insured.  This is no doubt in accordance with the intent of McCammon when he obtained the policy and paid the premiums, and the law will "interpolate in the contract a provision" to that effect.  It is held in all the cases where a debtor insures his life payable to a creditor and pays the premiums, he is entitled to the policy if he pays the debt.  *Courtenay* v. *Wright*, 2 Gifford, 337 ; *Morland* v. *Isaac*, 20 Beav., 389.  No principle can be better settled than that the avails of a policy *ought* to go to the person who applied for the policy and paid the premiums.  The only cases where any exceptions are made to this rule are, where the policy is by its terms payable absolutely to some other person, or where by statute it goes to the surviving widow or children.  The statute of 1871 recognizes this equity.  This is an equitable proceeding, and the court should decide it upon the equities of the case.  The provision as to children is of no consequence because there were none.  The surrender of the policy by Mrs. Reynolds and her husband, and the re-issue of a paid-up policy, without the knowledge or consent of McCammon, cannot change the rights of the parties.  *Chapin* v. *Fellowes*, 36 Conn., 132 ; *Lemon* v. *Phœnix Mut. Life Ins. Co.*, 38 id., 294 ; *Norwood* v. *Guerdon*, 60 Ill., 253.  The new policy was issued in consideration of the amount of premiums paid by McCammon ; it was payable to Mrs. Reynolds only on condition that she survived McCammon, and on her death any interest she might possibly have

had in it vanished. Nor does the fact that after the divorce she paid one premium, and after the issue of the paid-up policy she paid some interest on the notes, affect the construction of the contract. She did not pay them on any desire or request of McCammon. The fact that he paid the interest due in 1877, and that her last husband also tried to pay it, shows that this was merely an effort to deprive McCammon of his rights. The utmost that can be claimed is that these payments should be refunded to her administrator. Even if the statute of 1871 applies, McCammon paid every premium but one, and is entitled to almost all of the amount due.

*H. C. Robinson*, for the respondent Dunham.

The whole interest in the policy in question was vested in Mrs. Reynolds at the time of her death, and has passed to her legal representatives. The original contract is to be governed by the charter and the statute law of 1850. Both these legislative acts completely divest the husband of all interest in the policy. They give it to the wife as her separate estate; " shall inure to her separate use and benefit independently of her husband and his creditors and representatives." And these acts contemplate payment of premiums by the husband, and limit to $150, and then to $300 a year, the amount which he may pay as premium without defrauding his creditors. The policy is applied for in terms for the wife's benefit. The contract is with her alone, and the children in a certain event. The consideration is expressed to move from her, and the husband is no party to the contract in any way. He can maintain no suit at law or in equity upon it. These principles seem to need no support of authorities, but are fully recognized in *Thompson* v. *American Tontine Life Ins. Co.*, 46 N. York, 674, and in *Gould* v. *Emerson*, 99 Mass., 154. Our own court, in *Conn. Mut. Life Ins. Co.* v. *Burroughs*, 34 Conn., 305, says of such an insurance by a husband, " It is not a gift. The charter of the company and the statute law required the policy to be made as it was in order to protect it from the claims of creditors and the representatives of the husband." And again, " It is not a will, but a contract

authorized and regulated by the statutes, and when once entered into is no more revocable than a promissory note." The fact that there were no children rendered the condition as to them a nullity.· A promissory note payable in five years to *A*, and in the event of his death to his children, if *A* should die never having had children would plainly be a · promise to *A's* estate. *A fortiori* this is so when the contract is made under a statute which says that the contract shall be *A's* estate and her children's, "if any." A case exactly like this one arose in Indiana, and it is the only precisely similar case which we have found. *B* insured the life of her husband for the benefit of herself and her legal representatives. In case of her death before her husband, the amount of insurance was to be paid to her children. *B* died, and subsequently the husband, leaving no children. Held—in a contest between the executors of the husband and wife, "that the wife had such an interest in and ownership of the policy, and such a right to the proceeds, as would on her death descend to her heirs, though her husband survived her. Had the husband survived, the administrator of her estate might have sold and assigned the policy and distributed the money as the assets of her estate." *Hutson* v. *Merrifield*, 51 Ind., 24. The court says (p. 29) of the clause in the contract relating to payment to children if the husband survives the wife: "As there were no children to take the money under this clause of the policy, it may properly be regarded as if that clause had been wholly omitted from it." It is to be noticed in addition that the only statute of Indiana determining the course of insurance moneys in wives' policies had been repealed, and the case stood upon common law principles. The law of wills affords an imperfect analogy, because an insurance policy is a contract and not a gift, and because in wills there is a residuary clause to catch lapses. But even in the law of wills a similar principle is found. "Where a condition subsequent is impossible, or becomes impossible by the act of God, the condition will be void, and the legacy single and absolute, and in this case the civil and common law coincide." Willard's Eq., 528, and citations. The conclusion then is irresistible that the title to a policy like this one vests

in the wife's representatives at the time of her death without children, unless the late statutes affect the contract. The first statute which changes this state of things was enacted in 1871. This statute does not affect the original policy, because—1st, it is in its terms prospective, and, 2d, if it were otherwise it could not impair the obligation of this existing contract. When the court, in *Chapin* v. *Fellowes*, speaks of a wife's interest being "contingent," it is only as between the wife and the children, in a case where there were children. When the contingency is an impossibility the interest becomes absolute. There can be no contingency toward a husband in a contract from whose benefits the parties and the statute have excluded him. The entire opinion of the court in *Continental Life Ins. Co.* v. *Palmer*, 42 Conn., 60, favors the views we are urging.

PARDEE, J. The petitioners' charter, granted in 1851, (3 Private Acts, 611,) provides "that policies of insurance issued by said company on the life of any person, expressed to be for the benefit of a married woman, whether the same be effected by herself or her husband, or by any other person in her behalf, shall inure to her separate use and benefit, and that of her and her husband's children, if any, as may be expressed in said policies, independently of her husband and his creditors and representatives, and also independently of any other person effecting the same in her behalf, his creditors and representatives."

By virtue of this provision the husband is enabled to make in a specified manner a lawful gift to his wife, for her sole and separate use and benefit, irrespective of the claims of his creditors. Mr. McCammon bought of the petitioners their agreement to pay at his death a fixed sum to and for the sole use and benefit of his wife, and delivered the policy to her. There was then a valid contract between herself and the company; she held a chose in action, subject to the principles governing other agreements involving pecuniary obligations. If the amount expressed in the policy had been made payable to her without condition, she would at once have become the owner of a valuable property, which she was permitted, both

by the special law and the declaration of the husband, to hold independently of him; of an interest which she could sell or assign, either absolutely or by way of security; one which, upon her death, would pass to her legal representatives as would any other sole and separate estate. It is true that the gift to Mrs. McCammon was made subject to a condition subsequent; if issue had survived the amount would have been payable to such issue; but as no child was ever born to either of them the condition became void and may be laid out of consideration. Holding then the first policy as of her sole and separate property, she had the right to exchange it for the second. For this last she paid the entire consideration and the annual premiums save one. Thus she purchased insurance upon Mr. McCammon's life solely for her own benefit, and paid for it from her separate estate. And although it is true that upon a change of purpose he could have made the gift of the first policy valueless, so far as his own action was concerned, by omitting to pay the annual premiums necessary to keep it in force, it is difficult to perceive upon what principle his legal representatives can now retract and resume in behalf of his estate a valid gift made by him to his wife. It is suggested in argument that it is a strange conclusion of law that the first husband should pay money of which the second should have the benefit. But to this possibility all gifts from husbands to and for the sole and separate use of wives are exposed; the marriage tie is dissoluble by death or divorce; neither the dying nor the divorced husband can control the ultimate destination of the sole estate of the surviving or separated wife.

In *Conn. Mutual Life Ins. Co.* v. *Burroughs*, 34 Conn., 305, the policy was in favor of one Mrs. Kendall; she pledged it for borrowed money, and died; her husband died four days later; a child survived them. The contest was between that child and the pledgee. It was determined that by the terms of the policy the mother's interest ceased, and that of the child, which was before contingent, became fixed and certain by the death of the mother before that of the father, and that the mother could not by the pledge defeat the right of the child. In *Chapin* v. *Fellowes*, 36 Conn., 132, the mother

died, her husband and child surviving. After her death he surrendered the policy, took out another for the same amount in his own name and for his sole benefit, and within two years died insolvent, leaving children. The contest was between his creditors and his children for the fund. It was held that, upon the death of the mother previous to that of the husband, the policy by its terms immediately became payable to the children, and was so payable at the death of the father. In *Continental Life Ins. Co.* v. *Palmer*, 42 Conn., 60, the wife died, husband and children surviving; one of the children died leaving a child; subsequently the husband died. The effort was to exclude this grandchild from participating in the fund. It was decided that a transmissible interest vested in the children upon the issuing of the policy, and that the grandchild took by descent the interest of its parent.

The policy in each of these cases contained the proviso in behalf of children, and in each case children survived. The respective wives had received conditional gifts. At no moment was either of them in a position to deal with her policy as its absolute owner. In each case an event occurred which put an end to any interest in her or in her estate in the fund. In each case the duty of the court was to enforce the proviso in favor of children, and whatever is said in either of them as to the nature or extent of the interest of the wife in her policy, is to be understood as said of it in instances where there are children, and not as determining, where a policy is made payable without condition to the sole and separate use of the wife, in instances where there are no children, that she takes no interest unless she survives her husband.

The Superior Court is advised that the amount due upon the policy should be paid to the representative of the estate of Lydia S. Reynolds; the payment by Charles McCammon of $24.50 on December 29th, 1876, on the policy, with interest thereon, to be deducted and paid to. the representative of his estate.

In this opinion the other judges concurred.