By the Court.—Sedgwick, J.
The learned judge held that the policy of insurance was protected by the statutes in respect of life insurance for the benefit of married women, and that, in 1872, when the wife signed the paper, which was in form her assignment, she had no right to assign it (Eadie v. Slimmon, 26 N. Y. 9 ; Barry v. Equitable Ins. Co., 59 Id. 587). A married woman possessed such a right, for the first *158 time in 1873 (Laws of 1873, ch. 821). He thus impliedly held that her interest under the policy was not her separate estate, and she had no power of disposition over it as her separate estate. He further considered, that whatever the nature of her right was, her execution of the assignment was not her act, but it was the result of undue influence used upon her by her husband, which amounted to compulsion.
Undoubtedly (Barry v. Equitable Ins. Co., supra) if the means used by her husband" deprived her of mental or moral power to guide her actions, for herself, her signature was not voluntary. It was extorted from her. She had all the faculties for free action. She could not be deprived of those, but means might be used to stop their function.
The point to be scrutinized is the condition of the facility of volitión as determined by external circumstances, beyond her control. These circumstances are to be examined to ascertain their effect upon the will. Their character in other regards is immaterial. If the result was, that she was induced or persuaded to act, her signature was voluntary. If she was compelled to act, it was involuntary. The kind and amount of force used in such a case has the same relations that it would have in a charge' of robbery, as distinguished from larceny or false pretenses.
What will compel the wife to sign may depend upon her temperament and the past relations between her and her husband. There may not be much to testify to, so far as words or threats go, but the absolute- fact may be, that resistance to his will or noncompliance with it, was not possible. A judge must be very cautious, but in a case like the present, the wife herself is the witness to testify to her own state of mind. She swore she signed because she was afraid of her husband. The judge was bound to rest upon the fact, if she were credible. There was testimony to sup *159 port the finding of fact on this point, and it must be sustained.
The learned counsel for the appellant takes the position that the policy was not within the statutes that regulate life insurance for the benefit of married women. He argued that the statute meant to protect against creditors, the use of premiums paid from the husband’s moneys in case the benefit was to go to the wife, but in the present case the policy was in fact for the benefit of the husband, as he would have the insurance money if he lived to the year 1881. The whole premium was paid in solido for the husband’s benefit, and therefore the husband’s creditors would have a right to take it.
I think this is correct, and it meets the position that the insurance could not be assigned by the wife, by reason of the policy of the statute; but it does not meet the position that her assignment was obtained by compulsion.
Therefore the judgment must be sustained, unless the husband, at the time of his assignment, was possessed of the whole legal and beneficial property and interest in the policy, and the wife had no interest or property in it. .If the wife, however, had a right of action, in the nature of a gift by her husband, it became her sole and separate estate. If it was her separate estate, he had no power, in law or equity, to dispose of it. Before the statute to protect the estates of married women the husband had power in equity to give directly and without trustees personal property to his wife, so that it was free in equity from his power of disposition. By our statute, a gift by husband to wife, becomes her separate property for all purposes. The form of the gift is not important, if it appear that there was an executed intention to give (Stewart v. Kissam, 3 Barb. 493).
In cases like the present, the right or interest pro *160 ceeds from the husband voluntarily. His acts and intentions in respect of it are to be entirely respected, and the limitations and modes of control which he presented are to be entirely preserved.
It is said that he never parted or intended to part with his control, because the promise is wholly made to him, and the policy was kept in his own possession. The only clause which seems to give the wife an interest (viz., that which makes it payable to her, if he die before 1881), was dictated by him, and did not affect any right or interest of the company. It was not a stipulation for their beneiit.
If that clause were not in the policy, the husband could by law, without leave of the company, shape an assignment that wuuld have the same effect as the clause, and could keep any degree of control over the assignment he pleased. Therefore it is argued, that so long as the policy is not delivered to the wife, the maxim applies, viz., Expréssio eorum qucB tacite insunt nihil operatur.
This argument was used in Connecticut Mutual Life Insurance Co. v. Burroughs, 34 Conn. 305.
A married woman procured an insurance on her husband’s life, payable to her, her administrators and assigns, for her sole use. The policy provided that in case of the death of the wife before the death of the husband “ the amount of said insurance shall be payable after her death to her children for their use, or to their guardian if under age.”
Before the husband’s death she had assigned the policy to the defendant. After her husband’s death, the insurance money was claimed by her child. The court held that the child’s interest was protected by a statute of Connecticut, and could not be assigned by the mother. The court also looked at the case irrespective of the statute, and as if the premiums had been paid by her from her separate property. The *161 suggestion liad been made that the provision in favor of the children was an expressed but unexecuted intention to give the sum insured to her children, which she could abandon at pleasure. The court was of the opinion that “ the intention was not to give a sum of money to the children but to make a life policy in a certain event payable to them. The intention was not only expressed but executed. The contract was complete, and the money when due was payable to the children, without any further act on her part.”
It cannot with certainty be said that the law will deem a voluntary provision for wife or children final and irrevocable, under different and less significant circumstances than would uphold a voluntary disposition in favor of a person with no tie of blood or marriage. A meritorious consideration is hardly more than an expression used by judges to intimate a justifiable inclination to uphold a settlement. It is safest to consider that in all cases there must be a delivery, or an execution of the intention to benefit without delivery. In the present case, so far as intention goes, the omission to deliver the policy is not conclusive, for the form was such that the husband would retain it, to use for himself, in the contingency of his living until the year 1881.
In cases of choses in action actual delivery is not always necessary In Scott v. Sims (10 Bosw. 314; Borst v. Spelman, 4 N. Y. 288), and in Sanford v. Sanford (45 N. Y. 726), the law is applied that if a husband take a note to himself and his wife or to her alone, then in case she survive him, the action on it survives to her the wife, and the form of the security implies a design by the husband to benefit the wife. It was said that the wife had no legal interest in it during the husband’s life. Judge Beckham said specifically, in Sanford v. Sanford, that a delivery to the wife was unnecessary to perfect the gift. These cases are *162 like the present, excepting that in them the husband retained but did not exercise a power and right of disposition, during his Jife, and in this the husband in his life did all in his power to convey his whole right and interest in the policy, and also that in them the promise was made to the wife solely or jointly, directly, and in this, the promise is made solely to the husband. .
“ It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person he being neither privy to the contract nor to the consideration (Simson v. Brown, 68 N. Y. 362; Garnsey v. Rogers, 47 N. Y. 233); yet the form and nature of the contract of insurance and the point at which the wife could only reap the benefit of the provision in her favor,—that is, after his death,—show clearly that it was the husband’s intent that she should have a right of action.”
The mere form of this promise might not divest the husband of all power over the wife’s interest which he intended to bestow on her, but the contemporaneous acts, voluntarily and designedly adopted by him, were such as to make all else that was necessary to an executed transfer to her a matter of form. If the owner of personal property make an explicit declaration that he holds it in trust for another, it is an executed trust, although there is no doubt that no transfer and re-transfer was made. The reason of this must be, that, as owner, he has the power to furnish conclusive evidence that the result or effect of a transferring by him and taking a re-transfer to him in trust has occurred.
The rest is but a form which he, as owner in his own right, has the power to dispense with. Even in delivery of chattels as a gift, the form of relinquishing possession by the donor and the taking of it by the donee immediately, may be dispensed with, in the *163 instance of the chattels being within the power of the two parties,- and both act as if delivery and acceptance had taken place.
In this case, outside of the effect of the form of the policy, the husband declared in writing to the company that it was for the benefit of his wife, &c., and of himself, and upon that the company made the special promise, so far as it was for the benefit of the wife, to the husband acting in her behalf,—whether as her agent or trustee is immaterial. All that might have been done by him, in the shape of an assignment to her, and notice of that by him on her behalf to the company, would not have necessarily involved any action by her personally. The legal result would have been what he effected without the unnecessary form.
I am, therefore, of the opinion that under the circumstances the original delivery of the policy was to the husband, in her behalf and as well as his, and that upon that delivery she became vested with an interest which the husband could ■ not divest without her consent.
The judgment should be affirmed with costs.
Curtis, Ch. J., and Freedman, J., concurred.