CONTINENTAL LIFE INSURANCE COMPANY *vs.* BENJAMIN H. PALMER AND OTHERS.

A wife insured the life of her husband, the amount payable to herself if living, if not, to their children. She died before her husband, and one of the children died before him, leaving a child. Held that a transmissible interest vested in the children upon the issuing of the policy, and that the child of the deceased child took by descent the interest of its parent, and was entitled to the portion of the fund which the parent would have received if living.

BILL OF INTERPLEADER, brought to the Superior Court in Hartford County, against certain parties claiming interests, adversely to each other, in the amount of a life insurance policy payable by the petitioners. The following facts were found by the court upon the petition and the answers of the respondents.

The petitioners, on the 31st day of December, 1866, issued a policy of insurance on the life of Benjamin W. Palmer, upon the application and for the benefit of his wife, Betsey A. Palmer, the material part of which policy was as follows:—

" The Continental Life Insurance Company, in consideration of the representations made to them in the application for this policy and of the sum of $172.80 to them in hand paid by Betsey A. Palmer, and of the annual premium of $172.80, to be paid to said company on or before the thirty-first day of December in every year during the continuance of this policy, do assure the life of Benjamin W. Palmer, of Lisbon, in the county of New London, state of Connecticut, for the sole and separate use and benefit of the said Betsey A. Palmer, in the amount of three thousand dollars, for the term of his life. And the said company do hereby promise and agree to and with the said assured, her executors, administrators and assigns, well and truly to pay, or cause to be paid, the said sum insured to the said assured, her executors, administrators or assigns, within ninety days after due notice and satisfactory evidence of the death of the said Benjamin W. Palmer, and proof of the just claim of the assured under this policy, deducting therefrom all indebtedness of

the party to the said company, if any then existing. And in case of the death of the said Betsey A. Palmer before the decease of the said Benjamin W. Palmer, the amount of the said insurance shall be payable to their children, for their use, or to their guardian, if under age."

At the time of the execution and delivery of the policy, the children of Benjamin W. Palmer and Betsey A. Palmer, then living, were Benjamin H. Palmer, James B. Palmer, Charles C. Palmer, Amos F. Palmer, and Clara E. Palmer; all of whom except Amos F. Palmer are still living. Afterwards, in the year 1870, Amos F. Palmer died, leaving one child, Charles P. Palmer, one of the respondents. And in the year 1872, Betsey A. Palmer, the wife of the said Benjamin W. Palmer, died. And on the 14th day of July, 1873, the said Benjamin W. Palmer died.

The court found that due notice and satisfactory evidence of the death of Benjamin W. Palmer, and also proof of the just claim of the assured, as required by the terms of the policy, were made and presented to the petitioners on the 7th day of August, 1873, and that on the 7th day of November, 1873, there was due and payable on the policy the sum of $2,826.79, which was still due and unpaid, but which the petitioners were ready and willing to pay to the persons entitled to receive the same.

Upon these facts the case was reserved for the advice of this court.

*Freeman,* for the respondent Charles P. Palmer.

The question in this case is, whether Charles P. Palmer is entitled to any portion of the fund, under this clause of the policy: "In case of the death of Betsey A. Palmer before the decease of the said Benjamin W. Palmer, the amount of the said insurance shall be payable to *their children,* for their use, or to their guardian, if under age"; his father having died before the decease of Betsey A. Palmer.

1. Did Amos F. Palmer have an interest in the policy during his life? The general rule is, "that a policy, and the money to become due under it, belong, *the moment it is*

*issued*, to the person or persons named in it as the beneficiary or beneficiaries." Bliss on Life Ins., § 318. As one of the children of Betsey A. Palmer, who are named in it as the beneficiaries, Amos F. Palmer had, *in its inception*, an interest in the policy.

2.   Having thus acquired an interest in the policy, did that interest, *at his death*, cease and determine? By the terms of the policy, Amos F. Palmer had such an interest that Betsey A. Palmer could not, by *deed or will*, transfer the benefit of the policy to any other person. *Conn. Mutual Life Ins. Co.* v. *Burroughs*, 34 Conn., 305. His interest was *vested* in the inception of the policy, subject, it is true, to be divested by the death of Benjamin W. Palmer before the decease of Betsey A. Palmer. And at her death, before his, the interest of Amos F. Palmer, which before was *contingent*, became absolute. The fact that it became absolute *after his death*, will not defeat his interest, for his interest was devisable, as a chose in action belonging to him at death ; and dying intestate it passes to his representatives. *Keller* v. *Gaylor*, 40 Conn., 343 ; *Dale* v. *White*, 33 id., 295.

3.   If we regard the policy as an instrument testamentary in its nature, and by rules applicable to the construction of wills determine the right of Charles P. Palmer under it, and suppose that Betsey A. Palmer had made the policy payable *to herself*, and then had given it *to her children* by will, or had died intestate ; in either case, Charles P. Palmer would have taken an interest in the policy. In the one case, under the statute. " When a devisee or legatee, being a child or grandchild of the testator, shall die before him, and no provision is made for such contingency, the *issue* of such devisee or legatee, shall take the estate so devised or bequeathed." Gen. Statutes, Rev. 1875, p. 370. In the other, as the representative of his father. During her life, by a revocation of her will, she could have defeated the interest of her children. But by *inserting it in the policy* that it was to be payable to her children, she has put it out of her power to transfer their interest; has made, so to speak, a will *irrevocable*. From this fact alone it will be presumed that she intended all her

children to share equally in the policy. It will also be presumed that in the use of the words "their children," as expressed in the policy, she intended it should have the same construction as when used in a will. For there was nothing to lead her to make a distinction between her living children and the heirs of her deceased children. If the construction is a matter of doubt, the duty of the court is to incline to that construction which favors equality of distribution, as such would be her probable intent.

*G. Pratt* and *L. Brown*, for all the respondents except Charles P. Palmer.

We contend that Charles P. Palmer cannot take any portion of the fund. The whole question turns upon whether any of the children had any interest in the policy before the death of Betsey A. Palmer. It seems to us that the interest of both wife and children was a purely contingent interest. The interest of the wife was liable to be defeated by her death before her husband. *Conn. Mutual Life Ins. Co.* v. *Burroughs*, 34 Conn., 305; *Chapin* v. *Fellowes*, 36 id., 134. The interest of the children was liable to be defeated by her surviving her husband; for it is too plain for argument that the children would have no claim provided the wife outlived the husband. *Conn. Mut. Life Ins. Co.* v. *Burroughs*, supra. This being the case, the interest of the children was contingent until the death of the wife. It was neither descendible nor transmissible. 2 Bla. Com., 169, 171; 1 Jarman on Wills, 761, 763, 777. It is the same as if there was a bequest to Betsey A. Palmer, provided she survived her husband; but if she died before her husband, then to their children. In such a case it is clear that grandchildren could not take, under circumstances like these. "Children" cannot be construed to include "grandchildren," unless there is something in the provisions of the instrument showing that they are to included. Hawkins on Wills, 84; *Hone* v. *Van Schaick*, 3 Comst., 538; *Radcliffe* v. *Buckley*, 10 Vesey, 195; 1 Jarman on Wills, 296. The object of the statute and of the charter of the company is also to be considered. This

amount due under the policy could be held by the wife and children free from all claims of the creditors of Benjamin W. Palmer's estate. The legislature might be willing that this protection should be given to the wife and children, but might not be willing to extend it to grandchildren, or to heirs generally. Yet this would be the effect of the opposite construction.

CARPENTER, J.    Betsey A. Palmer insured the life of her husband, Benjamin W. Palmer, in the sum of three thousand dollars, payable to herself, if living, if not, to their children. She died before her husband. Amos F. Palmer, one of the children, also died during the life of his father, leaving issue, Charles P. Palmer, one of the respondents. The question reserved for our consideration is, whether Charles P. Palmer takes an interest in the policy, or whether the whole sum insured vests in the surviving children.

It will aid us in the solution of this question to consider briefly the nature, object, and purpose of this policy. In form it is a contract for the payment of money. In substance it closely resembles estate left by a deceased person. Its purpose is a provision for the benefit of the family after the death of the husband and father. It is in some sense an estate left by the deceased. Had it been payable to his representatives the title to the policy would have vested in him, and its avails would have been technically his estate. Being payable to the wife and children it is brought within the provisions of the statute exempting it from the claims of creditors. But for the statute it would have been a fund in the hands of his representatives for the benefit of creditors, provided the premiums had been paid by him. In such a case the operation of the statute would be in effect to vest a portion of his estate immediately in the widow, or heirs, without the intervention of executors or administrators. This case does not show whether the premiums were paid by the husband or the wife; nor is it material; the construction of the contract must be the same whether they were paid by the one or the other. Had the premiums been paid by him, and the policy been

made payable to his executors or administrators, it would have vested in them as such, and would have been liable for debts, and subject to distribution like any other estate. So too of the excess beyond the amount exempt from the claims of creditors. There is then so near a relationship between the money represented by this policy and the estate of a deceased person, that we think it should be governed by the same general principles.

The statute of distribution furnishes the rule of division in all cases where it is not otherwise provided. Where there is an intention, manifested according to the forms of law, to change the course of descent, the statute must yield. That intention is usually found in wills; in the case before us it is in a contract authorized by law. Had the wife survived she would have taken, and the property would have been diverted from the channel indicated by the statute. Her prior decease gives it to the children, substantially in harmony with the statute. This instrument, being testamentary in its nature, should be interpreted by the same rules. Therefore, as in wills of doubtful meaning, one construction being in harmony with the statute and the other contrary to it, preference is given to the former, so this contract should receive an interpretation, if possible, which will dispose of the fund according to the law of descent. We think there is no difficulty in so interpreting it. There is a natural presumption that the parties so intended it. When we consider that it was a *mother* who made this contract, and who probably paid the premiums, we cannot possibly presume that she, had her attention been called to it, and had she known that the child of one of her children would become an orphan before the policy became payable, would intentionally deprive such child of all interest in the policy. Had such been her intention it would have been easy to express it in unmistakable terms. Had the policy been payable to her "surviving children," or to those "who should be living" at the death of the insured, it would have removed all doubt.

But supposing, as she doubtless did, that all her children would survive, the policy was made payable to them generally.

And now a contingency has arisen which manifestly was not contemplated. If the natural presumption cannot be regarded as a legal presumption, and the law, to meet the contingency, is compelled to interpolate in the contract a provision, either limiting the payment to the surviving children, or including as payee the issue of a deceased child, we think both reason and justice require the latter. It requires no argument to show that it is just. Its reasonableness is equally apparent when we consider the nature and object of the estate, and the relation to it of the parties concerned.

There is another view which may be taken of this case, and which will lead us to the same result. The moment this policy was executed and delivered, it became property, and the title to it vested in some one. It will not be claimed that it vested in the person whose life was insured. It must have vested then in *all* or in a *part* of the payees. The payees consist of two parties, the wife, and the children. As only one could take and enjoy the property ultimately, it did not vest in all as tenants in common; nor did it vest in either so as to give a right to the present enjoyment of it. It was not, however, a mere expectancy, nor a naked possibility, but it was a possibility coupled with a present interest. It was visible, tangible property, and, like any other insurance policy, it was capable of assignment, and had an appreciable value. Each party took a conditional, not an absolute, right to the whole policy. It was not a condition precedent, but subsequent. The title vested in point of right immediately, but was liable to be divested upon the happening of a subsequent event. The right to the policy, in a strict sense, was not contingent; the possession and enjoyment of the fund thereby created were postponed to the future, and were contingent. This contingency applied to both parties—to the wife as well as to the children. Her enjoyment of the fund depended upon her surviving her husband; the children's, upon her husband's surviving her. In respect to each, it was a then present right to the future enjoyment of property, but it was liable to be defeated by a subsequent contingency, and was certain to be defeated as to one of them. That such a right is recognized

as property, and is transmissible to heirs, is a proposition abundantly established by the authorities.

The question has usually arisen in cases involving the construction of wills. But we cannot perceive that it makes any difference whether the instrument directing the payment of money is a will or a contract. So long as cases are alike in other respects, we apprehend that they will be governed by the same principles.

In *Winslow* v. *Goodwin*, 7 Met., 363, this subject is considered, and the doctrine broadly asserted that a contingent interest in real or personal estate is transmissible like vested interests, and the English authorities cited seem to sustain that position. We have no occasion to say that every contingent estate is devisable. Where the contingency is of such a nature that no interest vests until the happening of the event upon which the estate depends, it is difficult to see how anything can be transmitted to heirs. So too, if the death of a party in whom a contingent interest is vested, is an event, by reason of its happening before some other event, upon which the estate is given to others, the heirs take nothing. An illustration of this is found in the present case. The wife dying before her husband her interest in the policy did not descend to her heirs, but died with her, and the interest in the children became absolute.

In *Winslow* v. *Goodwin* the testator gave an estate real and personal in trust for the sole and separate use of a married daughter, and at the death of her husband it was to be conveyed to her and her heirs. The will further provided that if she died in the life time of her husband the trustee should hold it in trust for her children, until they respectively became of age, when it was to be conveyed to them. There were nine children, all of whom were born in the life time of the testator. The daughter died, her husband surviving her. Two of her children died before she did, and one afterwards; all of whom died without issue. It was held that the deceased children had an interest in both the real and personal estate which was transmitted to their heirs.

That is a strong case, and is an authority for holding that

the children in the present case had an interest in the policy from its inception, which was transmissible to heirs.

The English cases are equally decisive. Indeed the rule was established there at an early day, and does not appear to have been departed from. *Weale* v. *Lower,* Pollexfen, 54; *Anonymous,* 2 Vent., 347; *Pinbury* v. *Elkin,* 1 P. Wms., 563; *Chauncey* v. *Graydon,* 2 Atk., 616; *Hodgson* v. *Rawson,* 1 Ves., 46; *Barnes* v. *Allen,* 1 Brown C. C., 181; *Jones* v. *Roe,* 3 Term R., 88. The latter case was decided in 1789. Lord Kenyon, Ch. J., at the commencement of his opinion manifests a little impatience that the question should then be discussed as an open one, and closes his opinion by saying, "I sincerely hope that this point will be now understood to be perfectly at rest." In 1810 the doctrine was again recognized. *Perry* v. *Phelps,* 17 Ves., 173.

In Fearne on Remainders, 364, the rule is laid down as follows: "And in general it seems that contingent interests pass to the real or personal representatives, according to the nature of such interests, as well as vested interests, so as to entitle such representatives to them when the contingencies happen. But some cases may arise where the existence of the devisee of the contingent interest, at some particular time, may by implication enter and make part of the contingency itself upon which such interest is to take effect." The rule is thus stated by Chancellor Kent, 4 Com., 261: "All contingent and executory interests are assignable in equity, and will be enforced, if made for a valuable consideration; and it is settled that all contingent estates of inheritance, as well as springing and executory uses, and possibilities coupled with an interest, where the person to take is certain, are transmissible by descent, and are devisable and assignable." The doctrine as stated by Mr. Redfield, (Redfield on Wills, 390,) applies directly to the present case. "It seems to be settled beyond all question that all vested estates, even though liable to be defeated by conditions subsequent, are transmissible, and by consequence devisable."

Our own court has applied this doctrine to a life insurance policy like the one in the case at bar, and held that an inter-

est vests in the payee, during the life time of the person whose life is insured, so as to be the subject of testamentary disposition, notwithstanding such interest is liable to be defeated by a subsequent contingency. *Keller* v. *Gaylor*, 40 Conn., 343.

In *Conn. Mutual Life Ins. Co.* v. *Burroughs*, 34 Conn., 305, the policy was like the present one. The life of the husband was insured for the benefit of the wife, and in case of her death, of the children. The wife assigned the policy to a creditor, and died during the life time of the husband. It was held that the interest of the children was unaffected by the assignment, and that they were entitled to the avails of the policy. See also *Chapin* v. *Fellowes*, 36 Conn., 132.

For these reasons we are of the opinion that Amos F. Palmer at the time of his decease had an interest in this policy which was transmissible by descent; and consequently that the respondent, Charles P. Palmer, is entitled to that portion of the fund which his father would have taken if living.

The Superior Court is advised to render judgment accordingly.

In this opinion the other judges concurred, except PARK, C. J., who dissented.