Hutson, Adm'r, *v.* Merrifield, Adm'r.

———————•———————

HUTSON, ADM'R, *v.* MERRIFIELD, ADM'R.

LIFE INSURANCE.—*Descent of Policy.*—A wife holding a policy of insurance on the life of her husband died, leaving surviving her husband and her father and mother and brothers and sisters. Afterwards the husband died, leaving surviving his father and also brothers and sisters. Neither left children.

*Held,* that the wife had such an interest in, and ownership of, the policy, and such a right to the proceeds, as would, on her death, descend to her heirs, though her husband survived her.

SAME.—A policy of life insurance is a chose in action governed by the principles applicable to other agreements involving pecuniary obligations.

SAME.—*Repeal of Statute.*—The act of 1848 (Acts 1848, p. 31), providing how money received by a wife on an insurance upon the life of her husband should be disposed of, was repealed by the revision of 1852.

Hutson, Adm'r, *v.* Merrifield, Adm'r.

From the St. Joseph Common Pleas.

*W. G. George, A. L. Osborn, W. H. Calkins,* and *G. Pfleger,* for appellant.

*A. Anderson* and *L. Hubbard,* for appellee.

DOWNEY, J.—This is a controversy between two administrators, each representing a different estate.

The facts out of which the question in dispute grows are these: Newton Bingham and Emma L. Bingham were husband and wife. On the 23d day of March, 1867, Emma L. obtained from the New York Life Insurance Company a policy on the life of her husband. So much of the policy as it is material to set out reads as follows:

" This policy of insurance witnesseth, that the New York Life Insurance Company, in consideration of the representations made to them in the application for this policy, and of the sum of sixty-three dollars and thirty cents to them in hand paid by Emma L., wife of Newton Bingham, and of the annual premium of sixty-three dollars and thirty cents, to be paid annually on or before the 23d day of March in every year during the continuance of this policy, do assure the life of Newton Bingham, merchant, of Mishawaka, in the county of St. Joseph, State of Indiana, in the amount of three thousand dollars, for the term of his natural life, commencing on the 23d day of March, 1867, at noon. And the said company do hereby promise and agree to and with the said assured, her executors, administrators and assigns, well and truly to pay, or cause to be paid, the said sum assured, to the said Emma L. Bingham, or legal representatives, within sixty days after due notice and proof of interest (if assigned or held as security) and of the death of the said Newton Bingham. And in case of the death of said Emma L. Bingham before the decease of the said Newton Bingham, the amount of said insurance shall be payable after her death to her children for their use, or to their guardian, if under age, within sixty days after due notice and proof of the death of the aforesaid Newton Bingham, as aforesaid, deducting there-

from all notes or credits of premiums on this policy unpaid at the time," etc.

Emma L. Bingham died July 3d, 1868, leaving surviving her her said husband, her father and mother, and brothers and sisters. Newton Bingham died November 24th, 1868, leaving surviving him his father, and also brothers and sisters. They left no children.

The appellant took out letters of administration on the estate of Emma L. Bingham, and the appellee took out letters on the estate of Newton Bingham.

The insurance company paid the money to the appellant, as administrator of the estate of Emma L. Bingham. Upon settlement and distribution of the estate of Emma L. Bingham, it became a question how the money was to be distributed; whether the appellee, as administrator of the estate of Newton Bingham, was entitled to any part of the money, and if so, how much or what part of it; and also whether the appellant should be credited in his account with certain payments which he had made out of the fund in discharge of debts of the estate of said Newton Bingham.

The opinion and judgment of the court, as set out in the record, was as follows:

"And the court having heard the evidence adduced on the exceptions and answers thereto, and having examined the report and account current of said Hutson, as administrator of said estate, filed herein September 26th, 1871, and being fully advised in the premises, finds, that said Hutson, as administrator of the estate of Emma L. Bingham, is chargeable with the sum of two thousand nine hundred and sixty-three dollars and forty-six cents, received by him from the New York Life Insurance Company; and the court further finds that said Hutson, as such administrator, is not entitled to any credit for the disbursements set forth in his said account current and report, described as items 1 to 12 inclusive; that said administrator is entitled to credit for his reasonable costs and expenses of administration, and for his services and attorney's fees in the affairs of said estate, and

that the credits so proven are twenty dollars paid as attorney's fees, and twenty dollars and thirty-five cents paid as clerk's costs herein.

"And the court further finds that the said Hutson is chargeable, as such administrator, with interest on the balance of said sum of two thousand nine hundred and sixty-three dollars and forty-six cents, which may be left in his hands as a surplus after payment of his proper charges as such administrator, after one year after the receipt thereof.

"The court further finds that the date of such receipt of two thousand nine hundred and sixty-three dollars and forty-six cents does not appear in said report and account current, nor in the answer to the exceptions thereto.

"And the court further finds that the said William McK. Merrifield is administrator of the estate of Newton Bingham, deceased, and entitled, as such administrator, to three-fourths of the estate of Emma L. Bingham, after payment of debts and expenses of administration, the same being the distributive share of Newton Bingham, deceased, in said estate.

"It is therefore considered and adjudged that the account and report of Albert Hutson, as administrator of the estate of Emma L. Bingham, filed herein September 26th, 1871, be disallowed, and that said Hutson, as such administrator, is ordered to prepare and submit at the present term of this court a full, true and detailed account of his receipts and disbursements as administrator of Emma L. Bingham's estate.

"It is further ordered, that, in making up said account, he charge himself with said sum of two thousand nine hundred and sixty-three dollars and forty-six cents, at the date of the receipt thereof, and that he take no credit for any of the items mentioned in his said report, filed September 26th, 1871, as items Nos. 1 to 12 inclusive; that he is entitled to credit for said sums, twenty dollars as attorney's fees, and twenty dollars and thirty-five cents paid for clerk's costs herein, and for such further sum as he may have expended under the order of this court for a monument for the said decedent.

"It is further ordered by the court that on the balance of said sum of two thousand nine hundred and sixty-three dollars and forty-six cents, which may be left as a surplus after payment of his proper charges as administrator, he charge himself with interest at six per cent. per annum from and after the point of time commencing one year from the reception thereof."

To this ruling exception was taken, and the question properly reserved in the common pleas. It is here assigned as error.

The position upon the main question taken by counsel for the appellee, and which was sustained by the common pleas, is, that the policy was a part of the estate of Emma L. Bingham, and that at her decease it passed to her personal representatives for the payment of her debts and for distribution of the residue among her heirs under the statute of descents and distributions.

Counsel for appellant contend that the policy was the property of Emma L.; became valuable on the death of her husband, but had no particular value until that time; that her husband at her decease could not inherit; that personal property vests in the heirs only when distribution is made, and that until that time the title is in the executor or administrator, who holds it in trust; that the husband could not take an interest in the policy as heir, because it was not due until after his death; that the policy represented a mere expectancy of the wife, and there was nothing to take until his death; that the husband takes nothing in the character of husband, but takes as heir. How, then, it is asked, could the husband's administrator have collected the money on this policy? It was not payable to him; it was payable to his wife or her legal representatives. Counsel suppose it is a novel proposition that a person can inherit or take as heir the avails of his own death and transmit the same to his personal representatives. If he could not and did not take an interest, then it is quite clear, as counsel think, that his personal representatives cannot. Their claim must be under

and through him, and cannot be of any greater interest than his at and before his death.

Counsel for appellant claim that there was no property in the policy which could descend to heirs until after the decease of the party on whose life it was written; that accordingly, since Newton Bingham must have died before there was a right to receive the money under the policy, he could not take any part of it either by descent or distribution.

In 1848, an act was passed by the legislature, in terms authorizing a wife to insure the life of her husband, and providing how the money should be disposed of when received. Acts 1848, p. 31. This statute would seem to have been repealed by the revision of 1852. 1 G. & H. 534. We know of no statute now in force on this subject. No question is made in this case, however, as to the validity of the policy, or the right of the wife, had she survived her husband, to have and enjoy the proceeds of the policy as her own separate estate.

At the commencement of our examination of the question involved, it may be well enough to say that the clause of the policy by which the children of Mrs. Bingham were entitled to the money in the event of her death before the death of her husband, may be entirely laid out of view in disposing of the case. As there were no children to take the money under this clause of the policy, it may properly be regarded as if that clause had been wholly omitted from it. Had there been children of Mrs. Bingham, it is very well settled that they would have taken the money, to the exclusion of every one else, upon her death before that of her husband. *Swan* v. *Snow*, 11 Allen, 224; *Burroughs* v. *State Mut. Life Ass. Co.*, 97 Mass. 359; *Chapin* v. *Fellowes*, 36 Conn. 132.

A policy of insurance is a chose in action governed by the same principles applicable to other agreements involving pecuniary obligations. Bliss Life Ins. 506. A life policy is an agreement to pay a sum of money at the termination of the life insured. The party holding and owning such a

policy, whether on the life of another or on his own life, has a valuable interest in it, which he may assign, either absolutely or by way of security, and it is assignable like any other chose in action. Bliss Life Ins. 506, *et seq.; St. John* v. *The American Mutual Life Ins. Co.*, 3 Kern. 31; *St. John* v. *The American Mutual Life Ins. Co.*, 2 Duer, 419; *Palmer* v. *Merrill*, 6 Cush. 282; *Ashley* v. *Ashley*, 3 Simons, 149.

The policy itself in this case shows that it was intended to be assignable, for it requires proof of interest "if assigned or held as security," and it is payable "to the assured, her executors, administrators, and assigns."

This being true, it seems to us that Mrs. Bingham had such an interest in and ownership of the policy and such a right to the proceeds as would on her death descend to her heirs, and that this is so notwithstanding the person insured was yet living. If the policy is a chose in action, it is personal property, which at the death of the party holding and owning it would vest in the heirs of such person, subject to the payment of debts. That the amount of the policy is not payable until the death of the life insured, can make no difference. Suppose that Mrs. Bingham had owned a policy on the life of some one other than her husband, payable to her, and she had died; would there be any question but that the policy would have gone to her personal representatives and ultimately to her heirs by distribution? We think not. It can make no difference that the policy was on the life of her husband. We think counsel for appellant misapprehend the position of counsel for the appellee. They do not contend that the title to and ownership of the policy would, on the death of the wife, vest in the husband as it was previously vested in the wife. But they contend, as we understand them, that it is part of her personal estate, and that it did at her death vest in her representatives and should go to her heirs by distribution.

The statute of descents applies to personal as well as real property, and vests the ownership in the heirs immediately

on the decease of the owner, subject to be divested on the appointment of a personal representative. *Coldron* v. *Rhode,* 7 Ind. 151; 1 G. & H. 291, sec. 1, *et seq.*

The section applicable in this case is section 25, p. 296, 1 G. & H., which provides, that "if a husband or wife die, intestate, leaving no child, but leaving a father and mother, or either of them, then his or her property, real and personal, shall descend three-fourths to the widow or widower, and one-fourth to the father and mother jointly, or to the survivor of them," etc.

Had Newton Bingham continued to live, it seems that the administrator of his wife's estate might have sold and assigned the policy and distributed the money realized therefor as assets of the estate.

We can not think the position of counsel for appellant can be correct, when they assume that the right to the proceeds of the policy was not fixed until the death of the husband. Their case requires them, however, to maintain this proposition, and, to make out a title in their client to the whole amount of the money, they must establish the proposition that at the death of the husband the descent took place of property owned and held by Mrs. Bingham, who had died some time before. They must sustain the position that at the death of the party holding and owning a policy on the life of another, the title to the policy does not then descend to any one, but that on the death of the life insured the ownership of the policy descends to and vests in those who are then the heirs of the holder of the policy, although such holder was dead long before that time. By doing this, and only by doing this, can it be maintained that those who were next of kin to the deceased holder of the policy at the time of her death are deprived of their distributive share of the proceeds of the policy. We think the position untenable.

With reference to that part of the judgment of the court refusing to allow certain of the credits claimed by the appellant in his report, we have had some hesitation. As, however, some of the claims paid appear to be proper claims

against the estate of Newton Bingham, either in whole or in part, we have come to the conclusion that they should, so far as they were legal and valid claims against his estate, have been allowed.   It is objected to this view of the question that it does not appear that there are not other creditors of the estate of Newton Bingham who may be entitled to share in the fund.   This is true.   But some of the payments were made in discharge of preferred claims, which would probably have to be paid in full in any event.   Such are the items for funeral expenses, expenses of last sickness, etc. We do not mean, however, to decide which or how many of the items should be allowed, or whether the whole or only a proportionate part of them shall be allowed.   This can be determined by the circuit court on another hearing of the cause.

The judgment is reversed, with costs, and the cause remanded for a new trial.