FOSTER, Administrator, vs. GILE, Administrator, imp.

*December 4 — December 17, 1880.*

LIFE INSURANCE. *Rights of the insured and of the beneficiary, in respect to the policy.*

1. The doctrine of *Clark v. Durand*, 12 Wis., 223, and *Kerman v. Howard*, 23 id., 108, that one who procures a policy of insurance upon his life for the benefit of another, and pays the premium thereon, may dispose of it, by will or otherwise, to the exclusion of the beneficiary named in the policy — adhered to.

2. The beneficiary named in such a policy has an actual subsisting interest therein, but subject to the right of the insured who has paid the pre- miums to revoke the same, and retain it himself, or vest it elsewhere — at least with the consent of the insurer.

3. A policy of life insurance in such a case was made payable to A. and B., their administrators or executors, etc. After the death of A. & B., the insured filed among his papers, with the policy, a written assignment of it to one P., "in trust for the parties named," and also a paper ad- dressed "to my administrator," giving a list of his creditors and stating how he desired the insurance money applied. These papers were never delivered by him to any person, and neither of them was so executed as to constitute a will. *Held*, that the administrator of A. and B. is entitled to the insurance money.

[There is no dissent as to the last proposition. As to the grounds upon which it should be rested, CASSODAY and TAYLOR, JJ., file separate opinions.]

| 50 | 603 |
| 78 | 35 |
| 78 | 37 |
| 50 | 603 |
| 95 | 586 |
| 50 | 603 |
| 100 | 124 |
| 50 | 603 |
| 106 | 539 |
| 50 | 603 |
| 112 | ¹590 |
| 50 | 603 |
| d113 | ³ 93 |
| 50 | 603 |
| 115 | ¹561 |
| 115 | ¹646 |
| 116 | ¹213 |
| e116 | ¹218 |

APPEAL from the Circuit Court for *Winnebago* County.

The action was originally upon a life insurance policy, brought by the plaintiff against the corporation which issued it — the Penn Mutual Life Insurance Company of Pennsylvania. That company admitted its liability on the policy, and paid the amount of the insurance into court. By a proceeding under R. S., sec. 2610, the defendants above named (each of whom claimed the proceeds of the policy) were substituted for the insurance company as defendants in the action, and the contest thenceforth was for the money thus paid into court. The facts, as they appear from the pleadings and findings of the court, are as follows:

The policy was issued December 13, 1878, on the life of Walter H. Ballou, who paid all premiums thereon accruing before his death. By the terms of the policy, the insurance money was payable to John A. and Walter A. Ballou, his children, in equal shares, "their guardians, executors, administrators or assigns." These children were very young, and both of them died in the month of March, 1879. Walter H. Ballou died in April of the same year, intestate, leaving surviving him his widow, the defendant Ellen F. Ballou.

Walter H. Ballou made no further or other disposition of the policy or proceeds, except that after his death there was found amongst his papers, and with the policy, a paper in his handwriting, and bearing the signatures of himself and wife, purporting to assign the policy to the defendant Paige, "in trust for parties named." Another document was found in like manner, also in his handwriting, signed by him alone, and addressed "To my administrator," which contains a list of his creditors, and states how he desires the insurance money to be applied. Both these papers are dated March 28, 1879, which was after the death of both children. It does not appear that either paper was ever out of the possession of Walter H. Ballou, or was ever seen by any other person until after his death. The signature of Mrs. Ballou was written in blank,

at the request of her husband, and she was ignorant of what had been written over it until after the death of her husband. On these facts the circuit court found that the money in controversy belongs to the estate of the children, and accordingly awarded it to the plaintiff, their administrator. The administrator of the estate of Walter H. Ballou alone appealed.

*Geo. W. Burnell*, for the appellant:

The beneficiary in the policy has no vested right or interest therein, and can have none until after the death of the assured. The assured has full power to devise or otherwise dispose of the right under the policy. *Clark v. Durand*, 12 Wis., 223; *Kerman v. Howard*, 23 id., 108; *Archibald v. Ins. Co.*, 38 id., 542. The beneficiaries in this case, having died before the assured, never acquired any interest, and their administrator can have none.

For the respondents there was a brief by *C. D. Cleveland*, their attorney, with *Finch & Barber* of counsel, and oral argument by *Mr. Cleveland* and *Mr. Barber:*

The policy was payable to the children of the assured, " their guardians, executors, administrators or assigns." The plaintiff is their administator. The assured had made no disposition of the policy. Hence the cases cited by appellant are not applicable. The amount due on the policy belongs to the heirs of the children, and should go to their administrator. *Continental Life Ins. Co. v. Palmer*, 42 Conn., 60; *Hutson v. Merrifield*, 51 Ind., 24. Such administrator is named as a beneficiary in the policy, and has survived the assured.

LYON, J. It was held in *Clark v. Durand*, 12 Wis., 223, and again in *Kerman v. Howard*, 23 Wis., 108, that a person who procures a policy of insurance on his own life for the benefit of another, and pays the premiums thereon, may dispose of it, by will or otherwise, to the exclusion of the beneficiary named in the policy. The opposite doctrine was held in a very late case in Minnesota (*Ricker v. Charter Oak Life Ins. Co.*,

6 N. W. Rep., 771), and the opinion of the court seems to be fortified with authorities. However, until the legislature enacts otherwise, the rule of *Clark v. Durand* and *Kerman v. Howard* must be adhered to by this court.

Did Walter H. Ballou dispose of the policy, or the proceeds thereof, after the policy was issued? If he did so, it was effected by the drawing up and signing of the two papers found with the policy and with his other papers after his death. Neither of these papers was delivered to Paige, the assignee named in one of them, nor to any other person to be delivered to Paige or to the person who might thereafter be appointed administrator of the estate of the insured. Neither of them was executed with the legal formalities essential to their validity as bequests. They never saw the light until the author of them was dead. The most that can be said of them is, they tend to show that Walter H. Ballou at one time contemplated making the disposition of the proceeds of the policy indicated in the writings, but that he never executed his purpose in that behalf. We think it very clear that no claim by the administrator of his estate to such proceeds can be predicated upon those writings. The only remaining question to be determined is: Did the death of the beneficiaries, their father surviving them, of itself abrogate the stipulation making the insurance money payable as therein prescribed? If such was the legal effect of the death of the beneficiaries, undoubtedly the proceeds of the policy are a part of the estate of Walter H. Ballou, and should be awarded to his administrator, the appellant. The solution of this question requires a consideration of the relations of the beneficiaries to the policy, and their interest (if they have any) in it.

In the Minnesota case, above cited, it was held that the taking of the policy payable to the beneficiaries was an irrevocable and executed voluntary settlement upon the beneficiaries, and that the latter had an absolute vested interest in the proceeds of the policy, which could only be divested with

their consent. This is an extreme view, and is in conflict with our own cases. On the other hand, it was said in *Clark v. Durand, supra*, that the beneficiary has no present beneficial interest, no vested right, in the policy or the moneys agreed therein to be paid; and it must be conceded that the judgment in that case was placed upon the ground that during the lifetime of the insured the party beneficially interested had no actual equitable interest therein. This, also, is an extreme view in the opposite direction to the Minnesota case. Of course, we cannot adopt the doctrine of the Minnesota case to its full extent; for, as already observed, it overturns *Clark v. Durand* and *Kerman v. Howard.* But if there is any middle ground upon which the judgments in these cases may rest, and which commends itself as more reasonable and just, it ought to be adopted. We believe there is such ground, and we feel at liberty to adopt it. Notwithstanding what was said in *Clark v. Durand*, we think the taking of the policy by the insured, payable to another, is so far in the nature of an executed voluntary settlement that it vests in the person to whom the insurance money is made payable an actual subsisting interest in the policy, but not the absolute, unconditional ownership of it, and of the moneys therein agreed to be paid. The interest of the beneficiary is subject to the right of the insured, who has paid the premiums, to revoke the same and retain it himself or vest it elsewhere. At least, he may do this with the consent of the company which issued the policy.

To hold on the one hand that the transaction amounts to an executed voluntary settlement, and is therefore irrevocable, or, on the other, that it vests no interest whatever in the beneficiary, would lead in many cases to great embarrassments and hardships, the danger of which will in a great measure be removed by adopting the middle ground above suggested. Moreover, that ground is in entire harmony with the judgments in our own cases above cited, and we believe accords best with the analogies of the law.

The situation of the beneficiary has been likened to that of a legatee under a will. If the legatee dies before the testator, the legacy lapses. And so it is argued in this case that the death of the beneficiaries while the insured was living, revoked their interest under the policy. We suppose the reason why a legacy lapses by the death of a legatee, living the testator, is that the will is entirely inoperative during the life of the testator, and hence that the legatee takes no interest whatever under it until the testator dies. The fact that these beneficiaries took an actual present interest (although a conditional one), destroys the force and value of the comparison. Besides, the common-law rule of lapsed legacies is one which in its practical application has not unfrequently produced great hardship, if not injustice; hence, in England and in some of the United States, it has been materially modified by statute. 4 Kent's Com., 541, note *(c);* 2 Steph. Com., 249. It should not be extended by analogy to control a case where an interest in the property passes *in præsenti.* Yet, after all, it must be conceded that the provision which Walter H. Ballou made for his children in the policy is in the nature of a testament, and should be treated as a testament, as far as it can be consistently with the essential distinction above suggested between such provision and a testamentary disposition. Hence, the rules in respect to legacies may aid in determining the question under consideration.

To prevent the lapse of a legacy when the legatee dies before the testator, it is requisite — *first,* that the testator declare his intention that the legacy shall not lapse; and *second,* that he point out to whom it shall be paid if the legatee die first. The last requirement is fulfilled if the bequest is to the legatee, and his executors or administrators. 2 Redf. on Wills, 165, ch. 1, § 8, pl. 7, and cases cited in notes.

Manifestly, the effect of the testator's declaration that the legacy shall not lapse is to make the will operative at his death, by relation as of the time when it was made. This, by

like relation, would operate to vest in the legatee, in his lifetime, an interest under the will. In this case, as we have already seen, an actual subsisting interest in the policy and its proceeds vested conditionally in the beneficiaries without any such declaration, and it was quite unnecessary that their father should declare that such interest should not lapse if he survived them. Hence the beneficial clause in the policy is on the same footing without such declaration, as the bequest in a will (the testator surviving the legatee) with it. The other requirement to prevent the lapse of a legacy is fully complied with in the policy by the provision for the payment of the insurance money to the beneficiaries, their executors or administrators, which, we have seen, is sufficient. We conclude that, under the circumstances of the case, the beneficial interest of the children under the policy did not lapse by their death (their father surviving them), but goes to their administrator to be distributed as intestate estate of such children, and that the court properly awarded the proceeds of the policy to him.

The judgment of the circuit court must therefore be affirmed.

CASSODAY, J. In this case the father, Walter H. Ballou, procured an insurance upon his life, payable on his death to his two minor sons, John A. and Walter A., "their guardians, executors, administrators or assigns." The two sons died, leaving their father and mother them surviving. Afterwards the father died, leaving his widow, the mother of the sons, him surviving. An administrator was appointed for the estate of the father, and also an administrator for the estates of the sons, and both administrators are here claiming the insurance money. Which has the legal right to it? Was the policy the property of the sons at the time of their death, or did it remain the property of the father until his death, or did one have the absolute and the other the contingent interest, and, if so, which had the absolute and which the contingent interest? If the sons had an interest in the policy, when, if ever, did it

become fixed and vested, so that it could not be divested? Was it during the life or on the death of the sons? If not on the death of the sons, then was it on the death of the father? If the father had the absolute title and exclusive power of disposition during his life, then upon what theory did the sons acquire an interest after their death which they did not possess during their lives? Can minor sons, who have no estate at the time of their death, subsequently acquire one by the death of another? Can the administrator of the sons take any property, as administrator, which did not become fixed and vested in the sons during their lives? If the administrator of the sons took title under the policy by reason of the death of the father, and not by virtue of the death of the sons, then we have the anomaly of an administrator of persons having no estate administering upon the estate of a person subsequently dying, to the exclusion of the administrator of the estate he administers. This involves the double absurdity of an administrator taking by gift, instead of taking by operation of law, and the donee being selected, not by the donor, nor any one designated by him, but by the person who, upon his death, happened to be the county judge, and who named the donee on the assumption that he was appointing an administrator of the infants who left no estate. The law is logical — frequently arbitrary — necessarily so. It cannot bend for the convenience of solvency or insolvency. Could any shifting device be adopted, yet the beneficiary of to-day would be quite sure to be the victim of to-morrow. It would be a new departure to apply any doctrine of shifting uses to a case like this. An insurance policy is a contract to pay money on conditions, and as such is personal property. It must have an owner in whom it is vested from the very moment it is effected. Bliss, § 317. It is a *chose in action*, and governed by the same principles applicable to other agreements involving pecuniary obligations. *St. John v. Ins. Co.*, 13 N. Y., 39; *Hutson v. Merrifield*, 51 Ind., 29; *Palmer v. Merrill*,

6 Cush., 286. The most approved definition of a contract of life insurance seems to be, " that in which one party agrees to pay a given sum upon the happening of a particular event, contingent upon the duration of human life, in consideration of the immediate payment of a smaller sum, or certain equivalent periodical payments, by another." Bliss, § 3. The contract seems to be entire, notwithstanding the premiums may be payable in annual installments. "Each installment is, in fact, part consideration of the entire insurance for life." *N. Y. Life Insurance Co. v. Statham*, 93 U. S., 30; *Manhattan Life Ins. Co. v. Warwick*, 20 Gratt., 620, 621; *Ruse v. Ins. Co.*, 26 Barb., 558. Here the company by the policy agreed to pay, not to the father, but to the two sons, "their guardians, executors, administrators or assigns," at the time and upon the conditions named. Had the sons attained their majority, and the father died first, there would seem to have been no difficulty in the sons maintaining an action at law in their own name upon the policy, without the intervention of any transfer, or any legal proceedings. In the late case of *Drake v. Stone*, 58 Ala., 133, it was held that "under an ordinary life policy an interest vests in the person for whose benefit it is taken out, when the policy is delivered, subject to be divested or forfeited on non-payment of the premium, as the policy may prescribe; and on the death of the beneficiary, either before or after the death of the assured, the insurance money goes by bequest or succession, as other personal assets of the beneficiary."

In *Continental Life Ins. Co. v. Palmer*, 42 Conn., 60, "a wife insured the life of her husband, the amount payable to herself, if living, if not, to their children. She died before her husband, and one of the children died before him, leaving a child. *Held*, that a transmissible interest vested in the children upon the issuing of the policy, and that the child of the deceased child took by descent the interest of its parent, and was entitled to the portion of the fund which the parent

would have received if living." *Keller v. Gaylor*, 40 Conn., 343; *Chapin v. Fellowes*, 36 Conn., 132; *Conn. Mut. Life Ins. Co. v. Burroughs*, 34 Conn., 305.

In *Libby v. Libby*, 37 Me., 359, it was held that "where the husband effects an insurance on his life for the sole and separate use and benefit of his wife, if she dies before her husband, the property in the contract of insurance becomes vested in her heirs." In *Hutson v. Merrifield*, 51 Ind., 24, the facts were similar, and the court held "that the wife had such an interest in and ownership of the policy, and such a right to the proceeds, as would, on her death, descend to her heirs, though her husband survive her." To the same effect are *Swan v. Snow*, 11 Allen, 224; *Lockwood v. Bishop*, 51 How. Pr., 221; *Eadie v. Slimmon*, 26 N. Y., 9; *Fowler v. Butterly*, 78 N. Y., 68; *Myers v. Ins. Co.*, 27 Pa. St., 268; *Price v. Ins. Co.*, 17 Minn., 497; May on Ins., § 392. Mr. Bliss says: "If the policy, when issued, expressly designates a person as entitled to receive the insurance money, such designation is conclusive, unless some question arises as to the rights of the creditors of the person who paid the premium and procured the insurance." Section 316. "We apprehend the general rule to be that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his or hers, by deed or by will, to transfer to any other person the interest of the person named." Section 317.

If these authorities are sound, then the judgment in this case should be affirmed. They seem to be logical. They imply regular succession. They involve no break in the title. In them there is no absence of ownership during life, nor acquisition of it after death. They give no new meaning to the word " administrator," but recognize him as a trustee appointed by law to represent interests acquired by the death of the intestate. It is insisted, however, that these authorities are in-

consistent with *Clark v. Durand*, 12 Wis., 253, and *Kerman v. Howard*, 23 Wis., 108. In *Clark v. Durand*, the mother effected an insurance upon her own life, payable to the defendant, Durand, as guardian of her infant son, with money borrowed from Durand, although he was never in fact such guardian. Subsequently the mother, with the assent of the insurance company, assigned the policy to Durand for his own benefit, upon an agreement that he would pay all past and future premiums thereon, which he did. It would seem that the equitable interests of the mother, and her assignment to Durand, who paid all the premiums, were sufficient to vest the absolute title in Durand, to whom the insurance was in fact made payable, within the authorities above cited. "The only parties" to the policy, "real and nominal, were the defendant (Durand), Mrs. Clark and the company." Page 233. Thus the legal and equitable estate became united in Durand, and the only question was whether the infant was entitled as *cestui que trust*. There seems to be great force in holding that a person who effects an insurance on his own life, paying all the premiums, and retaining possession of the policy, is the equitable owner, notwithstanding it may in terms be payable to another. The case of *Kerman v. Howard*, however, seems to stand on a different basis. There the husband effected an insurance upon his own life, payable to his then second wife or her legal representatives, she at the time having an infant son by a former husband. After the wife's death, the husband willed the policy to his two children by a former wife and the infant son of his second wife, "in equal parts." This court held that the son did not take as the "legal representative" of his mother under the policy, but that he and the two daughters of his step-father took under the will of the husband. When it is remembered that, by all the authorities, a will can have no effect upon the title of property during the life of the testator, but only upon his death, it would seem that this court there held that the beneficiary named in that policy took no

interest therein whatever, but that the exclusive property and ownership thereof remained in the husband up to the very moment of his death, and then passed by his will as a part of his estate.

I concur in the conclusion of the majority of the court that this judgment should be affirmed.

TAYLOR, J. If the case of *Kerman v. Howard*, 23 Wis., 108, is not to be followed, then I agree with Justice CASSODAY that the respondent can recover the money due upon the policy, as administrator of the estate of the deceased children, only upon the theory that the right to the money to become due upon such policy was vested in them at the time of their decease.

*By the Court.*— Judgment affirmed.