ELIZABETH W. BROWN et al., administrators &c. of Alexander Shiras, deceased,

*v.*

THOMAS S. MURRAY, executor of Frances B. Shiras, deceased.

A policy provided that, in consideration of an annual premium to be paid by A. S., the insuring company would insure his life in the amount of $2,000 for the term of his life, *for the sole use of his wife, Frances,* the sum so insured to be paid to A. S., his executors, administrators and assigns, within ninety days after due notice and proof of his death. A. S. and his wife both died several years after the delivery of the policy, but the wife died before the husband.—*Held,* that in equity the wife acquired a vested interest in the reserve fund belonging to the policy immediately upon its delivery, and that on her death such interest devolved upon her executors, who were entitled to it, as against the administrator of the husband.

On final hearing.

On October 20th, 1847, the Mutual Benefit Life Insurance Company issued to Alexander Shiras a policy of insurance containing the following provision :

Brown *v.* Murray.

"This policy of .insurance witnesseth that the Mutual Benefit Life Insurance Company in consideration of fifty-two dollars and eighty cents to them in hand paid by Alexander Shiras, and of the annual premium of fifty-two dollars and eighty cents to be paid on or before the twentieth day of October in every year during the continuance of this policy, do assure the life of Alexander Shiras, of Georgetown, in the county of Washington, District of Columbia, in the amount of two thousand dollars for the term of life for the sole use of his wife, Frances B. Shiras.

"And the said company do hereby promise and agree to and with the said assured his executors, administrators and assigns well and truly to pay or cause to be paid the said sum insured to the said assured his executors, administrators or assigns within ninety days after due notice and proof of the death of the said Alexander Shiras, deducting therefrom all notes taken for premiums on this policy unpaid at the time."

Alexander Shiras paid the premiums on the policy up to the time of his death in November, 1894. Mrs. Shiras, the beneficiary named therein, died before her husband, in August, 1892.

Alexander Shiras also held in his possession at the time of his death a certificate in the Clergyman's Mutual Insurance League reading as follows :

"This certifies that Rev'd Alexander Shiras is a member of the Clergyman's Mutual Insurance League, ........................ He having made application and paid his membership fee.

"This certificate is issued at his request in favor of his wife, Frances B. Shiras. And the said Frances B. Shiras will be entitled to receive from the league within 40 days after the death of the said Alexander Shiras the sum of two dollars from each and every member of the league. Provided that if the said Alexander Shiras be in arrears for dues at the time of his death, .................... this contract shall be void.

"Given at Red Bank this 4th day of May, A. D. 1870.

"F. C. PUTNAM, *Pres.*                          WM. D. DUNNELL, *Treas.*"

The Mutual Benefit Life Insurance Company has paid the money due on the policy issued by it to the complainants as administrators of Alexander Shiras. The Clergyman's Mutual Insurance League still retain the moneys payable on their certificate.

The bill prays that decree may be made determining whether the insurance moneys above mentioned belong to the estate of Alexander Shiras or to that of his wife.

*Mr. Edward S. Atwater,* for the complainants.

*Mr. William M. Lanning,* for the defendant.

STEVENS, V. C.

I think the obvious and proper reading of the clause in the policy of the Mutual Benefit Life Insurance Company, in respect of which the present controversy has arisen, is this:

"The said company does hereby promise and agree to and with the said assured [Alexander Shiras], his executors, administrators and assigns, well and truly to pay or cause to be paid the said sum insured to the said assured [Alexander Shiras], his executors, administrators or assigns, for the sole use of his wife, Frances B. Shiras."

The wife died before the husband, and the question is, what interest did she take? Was it an interest which was contingent upon her surviving her husband, in which case the insurance money would belong to her husband's estate, or an absolute interest, in which case it would, at the wife's death, have passed to her executor for the benefit of her estate?

Where a person procures a policy upon his life, payable to another, and himself pays the premiums and retains the policy in his own possession, there is some conflict among the cases as to whether the insured has power to change the beneficiary, and consequently some difference of opinion as to the nature of the beneficiary's interest. But the question is not an open one in this state, the law having been settled by *Landrum* v. *Knowles, 7 C. E. Gr. 594.* In that case a policy was taken by a wife on her husband's life in favor of and payable to her children. She paid several premiums and then assigned the policy in payment of her husband's debt. After the assignment the husband died, and the children filed a bill against the creditor, claiming the whole amount of the insurance money. It was decided that the children were entitled to the reserve or accumulated fund belonging to the policy at the time it was assigned and that the creditor was entitled to the balance. The chief-justice said: "The interest in this policy was effectually transferred to these appellants,

for by its very terms it is made payable to them, and it is diffi-
cult to perceive what ceremony or fact is wanting to the per-
fection of the gift to them.  The mother pays the premium for
the use and benefit of the children, and the insurance company,
at her instance, in the policy, enter into an agreement to pay the
insurance money to them.  The gift to the children is voluntary,
but very clearly it is completely executed as a gift by the mother,
from whom it proceeds." The meaning of this passage is un-
mistakable, and the case is all the stronger because the chief-
justice is not speaking of a policy payable to the insured, his
executors and administrators, for the *use* of the beneficiary, in
which case the insured would properly retain possession of the
policy as trustee, but of a policy payable directly to the children.

The point decided was that at the time of the delivery of the
policy the gift was executed in the children, who immediately
acquired a vested interest in the reserve fund belonging to it;
but that as the wife had not entered into any covenant to pay
future premiums and so was not bound to pay them, the children
had an interest coextensive only with the value of the payments
she had paid.  Of this interest she could not deprive them, but
she might deprive them of all other interest.

It will thus be seen that the court of errors has taken a middle
ground.  It refuses, on the one hand, to assert with Mr. Bliss,
and with perhaps a majority of the state courts which have con-
sidered the question, that the person procuring the insurance and
paying the premiums has no power to divert any part of the fund
from the beneficiary named (*Bliss Life Ins. § 318; Continental
Life Insurance Co.* v. *Palmer, 42 Conn. 60; Drake* v. *Stone, 58
Ala. 136; Harley* v. *Heist, 86 Ind. 197*), and it refuses, on the
other hand, to hold, as the supreme court of Wisconsin, in *Foster*
v. *Gile, 50 Wis. 606*, held, that every policy made payable to a
person other than the insured and remaining in the possession
of the insured, should be read as if it contained a power of revo-
cation, enabling him at any time, at least with the consent of the
company, to completely divest the beneficiary named therein of
all interest.

The nature of the beneficiary's interest having thus been ascer-

tained, it will not be difficult to solve the question at issue. It is to be noted, in the first place, that Mr. Shiras did not at any time during his life attempt to alter the destination of the fund, and, in the second place, that his continued possession of the policy was consistent with the provision that the money was to be paid to himself, his executors and administrators, not, however, for his or their benefit, but "for the sole use of his wife, Frances B. Shiras."

The policy contains the only contract between the parties. By its terms, the right of the wife to the money is absolute. The gift is not limited in point of time and is not made contingent upon the happening of any event. The only duty which the trustees had to perform with respect to the money they were to receive was to pay it over to the wife, who was to have the *sole* use of it. So broad is the language of gift, that I understand it to be conceded that had the wife survived the husband, she would have taken it absolutely. But it is said the gift was made contingent upon her survivorship. Not being able to find words of contingency in the policy itself, it is argued that we cannot suppose that the husband had the design of benefiting his wife's relatives at the expense of his own. The case does not show what relatives Mr. and Mrs. Shiras had, nor how Mr. Shiras felt toward them. The facts are not before the court and could not be proved for the purpose of varying the terms of the contract. The effort really is to add to the words "for the sole use of his wife, Frances," the further words "if she should survive him." It would hardly be contended that the court would do this if the beneficiary were a child (*United States Trust Co.* v. *Mutual Benefit Life Insurance Co., 115 N. Y. 153; Weston* v. *Richardson, 47 L. T. N. S. 514; Ricker* v. *Charter Oak Life Insurance Co., 27 Minn. 193*) or a creditor, and on what principle would it do it in the case of a wife? Should the same words be construed as giving to the wife one kind of interest and as giving to the child or creditor another kind?

In all the cases cited by counsel there were to be found in the policy itself words importing contingency. *Fuller* v. *Linzee, 135 Mass. 469*, is a case of this description. There the language was,

Brown *v.* Murray.

"in case the said assured [the wife] should die before the decease of N. G. F." (the husband), the insurance money was to be paid to the children, and the court was able to declare that the policy itself warranted the inference that Mrs. Fuller was to take nothing unless she survived her husband.

In *Olmstead* v. *Keyes, 85 N. Y. 593,* the Mutual Life Insurance Company issued a policy upon the life of I. O. K., the husband (who procured it and paid the premiums upon it), to I. as trustee for his (I. O. K.'s) wife. The wife died in her husband's lifetime and subsequently the husband married again and assigned his interest in the policy to his second wife. The court sustained the assignment. This case is plainly an authority in favor of the view I have taken, for Mr. Justice Earl says that the husband's title came to him from his first wife, on her death, he being entitled to her choses in action *jure mariti.*

In *Harley* v. *Heist, 86 Ind. 197,* the policy was payable to "the said assured [the husband], his executors, administrators and assigns, for the benefit of and payable to Wilhelmina, his wife." The husband attempted to assign it to a creditor after his wife's death. It was held that the assignment was invalid as against the claims of his wife's heirs-at-law. And see *Campbell* v. *New England Mutual Life Insurance Co., 98 Mass. 381, 400.*

I am, therefore, of opinion that the complainants, who are administrators of the husband, should pay the money they have received on this policy to the executor of the wife for the benefit of her estate.

As to the certificate issued by the Clergyman's Mutual Insurance League, I can find absolutely nothing in it which gives the complainants the semblance of any claim. If they have any by reason of their intestate's membership or by reason of the constitution or by-laws of the league, the bill does not disclose it.