THEOPHILUS PACKARD ET AL., Plaintiffs in Error, v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Defendant in Error.

### February 1, 1881.

1. The refusal of an insurance company to issue a paid-up policy is no breach of the contract of insurance where the policy contains no provision that the company shall do so.

2. The retention by the insurer of a policy returned by the insured with a qualified surrender indorsed thereon is no ground for demanding a return of the premiums paid.

3. A refusal by the insurer to receive payment of a premium from the insured, where the same had been paid by another is not a breach of the contract.

4. The insured and the insurer cannot so change the policy of life insurance as to destroy the interest of the beneficiary named therein, without his consent.

5. Intimations of legal conclusions do not constitute an estoppel.

ERROR to the St. Louis Circuit Court, THAYER, J. *Affirmed.*

JOHN M. GLOVER, for the plaintiffs in error : The receipts of the premium of July 28, 1874, with notice that Mrs. Packard claimed to be sane, and that the relation of husband and wife between her and Theophilus Packard had not ceased, estops the defendant to plead these statements against plaintiff as a ground for avoiding the policy. — *Wiele* v. *Germania Ins. Co.*, 26 Iowa, 9 ; *Mershon* v. *National Ins. Co.*, 34 Iowa, 87 ; *Armstrong* v. *Turquand*, 9 Irish L. T. (N. S.) 32 ; *Rathbone* v. *City Fire Ins. Co.*, 31 Conn. 194. When the company issued the policy of 1860, upon the application of 1849, they knew that Theophilus Packard was over forty-eight years of age, and therefore are now estopped to object on that score. — *Sweeney* v. *Provident Life Ins. Co.*, 14 Irish L. T. (N. s.) 476 ; *Pimus* v. *Lewis*, 2 Fost. & Fin. 178. When the insurer wrongfully refuses to receive the annual premium, the insured may treat the contract as at an end, and recover all the premiums paid under it. — *Cohen* v. *New York Mutual Life Ins. Co.*, 50 N. Y. 610 ; *Smith* v. *Charter Oak Life Ins. Co.*, 1 Cent. L. J. 76 ; *s. c.* affirmed, 64 Mo. 330. The company having expressly assured the beneficiaries that the new policy would be valid if changed, and the change having been made upon the faith of that assurance, the defendant is now estopped to deny its validity. — *Evers, Tr.*, v. *Life Association*, 59 Mo. 429 ; *Steele* v. *St. Louis Mutual Life Ins. Co.*, 3 Mo. App. 329. The measure of

damages is all the premiums from 1849 to 1876. — *McKee* v. *Phœnix Ins. Co.*, 28 Mo. 353. Theophilus Packard having taken out the policy for the separate use of Elizabeth Packard, and having retained it in his possession and himself paid the premiums upon it until it was changed in 1860, had the right to change it with the consent of the company. — *Gambs* v. *Covenant Mutual Life Ins. Co.*, 50 Mo. 46 ; *Charter Oak Life Ins. Co.* v. *Beach*, 47 Mo. 419 ; *Clark* v. *Durand*, 12 Wis. 223 ; *Kernan* v. *Howard*, 23 Wis. 108 ; *Barry* v. *Equitable Life Ins. Co.*, 59 N. Y. 587 ; *Palmer* v. *Merrell*, 6 Cush. 286. Should it be held that the change of benefits in 1860 was of no effect to divest the rights of Elizabeth P. W. Packard, the plaintiffs in this action would still be entitled to all the premiums' paid by them since the change as between them and E. P. W. Packard. — *Connecticut Mutual Life* v. *Burroughs*, 34 Conn. 103 ; *Eadie* v. *Slimmon*, 26 N. Y. 1 ; *Lemon* v. *Phœnix Mutual Ins. Co..* 38 Conn. 294. In a direct action by plaintiffs against the company, defendant cannot plead the equity of the wife in the proceeds of the policy as a defence. — *Barry* v. *Brune*, 15 N. Y. S. C. — *Burroughs* v. *State Mutual Life Assur. Co.*, 97 Mass. 359 ; *Palmer* v. *Merrell*, 6 Cush. 288, note ; *Kingsley* v. *New England Ins. Co.*, 8 Cush. 393.

LEE & CHANDLER, for the defendant in error: The proof does not sustain the allegations of the petition, and, therefore, plaintiffs were not entitled to recover. — *Jones* v. *Louderman*, 39 Mo. 287 ; *Murphy* v. *Wilson*, 44 Mo. 313 ; *Robinson* v. *Rice*, 20 Mo. 229. A trustee, having accepted the trust, cannot abandon it at pleasure, but only with the consent of the *cestui que trust*, if competent to consent, and with the sanction of the court. — *Jones* v. *Stockett*, 2 Bland, 409 ; *Cruger* v. *Halliday*, 11 Paige, 314 ; *Lathrop Campton*, 31 Cal. 17. The insurer and the insured had no lawful right to change the beneficiary in the original policy, issued in the year 1849, and they could not affect

Mrs. Packard's rights by so doing; her interests were vested, and could not be divested without her consent. — *Chapin* v. *Fellows*, 36 Conn. 132 ; *Lemon* v.*Phœnix Mutual Ins. Co.*, 37 Conn. 294 ; *Gould* v. *Emerson*, 99 Mass. 154 ; *Glendale* v. *Proctor*, 21 Conn. 37 ; *Rupert* v. *Union Mutual Ins. Co.*, 7 Robt. 155 ; *Gambs* v. *Insurance Co.*, 50 Mo. 44. Money paid under a mistake of law, with full knowledge of the facts, is not recoverable.—*Elliott* v. *Swartout*, 10 Pet. 137 ; *Bank of United States* v. *Daniels*, 12 Pet. 32 ; *Haven* v. *Foster*, 9 Pick. 112 ; *Wharton* v. *Wharton*, 9 Conn. 96 ; *Pinkham* v. *Gear*, 3 N. H. 173 ; *Hubbard* v. *Martin*, 8 Yerg. 498 : *Ege* v. *Koontz*, 3 Barr, 109 ; *Lyon* v. *Tallmadge*, 14 Johns. 526 ; *Clark* v. *Dutcher*, 9 Cow. 674.

LEWIS, P. J., delivered the opinion of the court.

In the year 1849 a policy of insurance was issued by the defendant on the life of the plaintiff, Theophilus Packard, upon his application, in the sum of $4,000, payable on the event of his death, to his wife, Elizabeth P. W. Packard, and in the event of her death prior to that of the insured, then to her children. Theophilus Packard paid the annual premiums until the year 1860. He then opened a correspondence with the defendant concerning a change of the policy which should leave out his wife, and make his children the only beneficiaries. He was informed that this could be done without his wife's consent. The old policy was returned to the defendant, and another was issued, bearing the same number, date, and amount of premium, and being a reproduction of the first in all particulars, excepting the names of the beneficiaries, of whom Mrs. Packard was not made one. No additional premium was required on account of the change, although the insured was older, by eleven years, than when the first policy was issued. The change was made without the knowledge or consent of Mrs. Packard, who, in 1873, notified the defendant of this fact, and of her claim to be still considered

a beneficiary. Mr. Packard continued to pay the annual premiums until the year 1876, inclusive. In 1877, he applied to the defendant for a paid-up policy in lieu of the one he held. Some correspondence ensued, in which the defendant expressed a willingness to issue a paid up policy, but took the ground that the change of 1860 was made under a mistaken view of the law governing the case, and was unauthorized, and that a paid up-policy, if issued, must be for the beneficiaries who were named ·in the original policy of 1849. Mr. Packard wrote upon his changed policy a qualified surrender, and mailed it to the defendant. In this surrender he copies from the defendant's letter what he calls a written promise to give him a paid-up policy upon surrender of the original; and assuming that by the expression " original policy " the defendant means the substituted policy of 1860, he claims that the paid-up policy shall be, as to parties, in the same form with that. He omits to copy, however, the next following sentence in the same letter, wherein the defendant carefully explains that the paid-up policy, if issued, must follow the terms of the first policy, issued in 1849, and not those of the erroneously substituted policy. There was some further correspondence, in which both parties adhered to their respective positions, Mr. Packard still insisting that the paid-up policy must be made for the beneficiaries named in the substituted policy, and the defendant refusing to frame it otherwise than as the first was issued, in 1849. In 1878, Mrs. Packard paid the annual premium of $160.40 a few days before it fell due ; and on the day when it became due Mr. Packard tendered the proper sum in payment, but the defendant refused to receive it. The policy · was not delivered to Mrs. Packard, nor was it ever in her possession. This suit is brought by Theophilus Packard and his children to recover back the premiums paid, with interest. The Circuit Court, sitting as a jury, found for the defendant.

If the claim of the plaintiffs, that the substituted policy

of 1860 was and is the true contract between the parties, could be sustained, it would still be difficult to perceive upon what ground the plaintiffs ought to recover in this action. The mere retention of the policy by the defendant, against the plaintiffs' demand for possession, would certainly furnish no reason for a compulsory return of all the premiums paid. If not lost or destroyed, together with all proofs of its provisions, the contract could be observed and enforced in all its terms, whatever it might be. But the plaintiffs charge that the defendant has broken its contract, and therefore they are entitled to rescind, and to demand restitution. How has the defendant broken its contract? This must be either by its failure to issue a paid up policy, or by its refusal to receive from Mr. Packard the annual premium for 1878. As to the first of these supposed breaches, we do not perceive that the defendant was ever under obligation to issue a paid-up policy of any sort. No such obligation was expressed or implied in the original or the substituted contract. The promise by letter, on which the plaintiffs rely, was distinctly qualified by a reservation that the paid-up policy should be for the beneficiaries first named in 1849. But such a policy as this Mr. Packard was unwilling to receive. There was, therefore, no violation of any promise in the premises. Nor was there any breach of contract in the refusal of the annual premium for 1878. That refusal was not based on any indisposition to abide by and perform the contract. It was distinctly placed upon the fact that the premium had already been paid, and implied an actual adherence to the letter of the contract. In our opinion these considerations are sufficient to authorize an affirmance of the judgment rendered by the Circuit Court. But other questions have been discussed by counsel with so much earnestness, that it seems proper to note here our impressions concerning them.

It is insisted for the plaintiffs, that Mrs. Packard never held such a proprietary interest in the original policy of 1849

as would make her consent necessary to the validity of a material change in its terms, agreed upon between the insurer and the insured. It seems to be conceded that, under the statutory law of Connecticut, and the judicial decisions thereupon, the contrary might be true. But it is claimed that the controlling statute was not enacted until after the delivery of the policy under consideration, and that the amount of premium paid excludes this case from the operation of the statute; wherefore, the rights of these parties must be tested by the common law.

It is by no means certain that, under the common law, a policy of life insurance for the benefit of one having no pecuniary interest in the life, would be void in the hands of the beneficiary. Such is declared to be the rule in *Ruppert* v. *Insurance Company*, 7 Robt. 155. The learned judge there adds, that "the only manner in which a father could provide for his wife or minor children, by way of a life-policy upon himself, was to insure his life for his own benefit." If this were really the settled rule, it might well be maintained in the present case that Mrs. Packard never acquired a vested right in the original policy, and that the contract remained subject to any modification that might be agreed upon between insurer and insured, as the only contracting parties. But this view is not uniformly sanctioned, even by the English authorities. In the year 1744, a statute was enacted, entitled "An act for regulating insurances upon lives, and for prohibiting all such insurances except in cases where the persons insuring shall have an interest in the life or death of the persons insured." 14 Geo. III., c. 48. In *Craufurd* v. *Hunter*, 8 Term Rep. 14, it was said by Gross, J., that whoever read that statute "must see that before that time a wagering policy was not illegal. The words of that statute clearly show that before that time any person might have insured without interest." Expressions of like effect were used in *British Insurance Co.* v. *Magee*, Coo. & Al. 182, and in several later cases. But in *Dalby*

v. *Assurance Co.*, 18 Jur. 1024, and in some American cases of high authority, the contrary view is emphatically declared. *Ruse* v. *Insurance Co.*, 23 N. Y. 516. In fact, such a difference of opinion appears to have prevailed that any reference to the general common-law rule would discover a very uncertain light for our present inquiry. It seems, however, to be pretty well understood that, in any view of the common law, where the assured or beneficiary has a direct pecuniary interest in the continuance of the life insured, the policy will be valid and enforceable in favor of such beneficiary. In this aspect, the rule is easy of application to the case of a wife who has the direct interest of her own maintenance in the life of her husband. *Reed* v. *Assurance Co.*, Peake's Ad. Cas. 70.

When it is once settled that a life-policy is valid and enforceable on behalf of the beneficiary named therein, there seems no difficulty in determining that the interest of such beneficiary cannot be disturbed, without his consent, by the mere act of the person insured coöperating with the insurer. In the case of a wife or children, the transaction has been regarded as a voluntary settlement, irrevocable by the grantor, although of doubtful assurance against the claims of creditors. In *Fortescue* v. *Barnett*, 3 Myl. & K. 36, the defendant held a policy on his own life, which he assigned by voluntary deed to trustees for the benefit of his sister and her children. The company had no notice of the assignment. Afterwards, he surrendered the policy to the insurance company, for valuable consideration. It was held, on a bill of equity against him, that the defendant could not thus defeat the settlement upon his sister and her children, and that he must give security to guarantee them against any loss of the benefits which should accrue to them from the policy, if kept alive. In the matter of the *Succession of Kugler*, 23 La. An. 455, it was held, on general principles, that " a policy of insurance on the life of a man,

taken out in favor of his wife and children, vests the right to the policy in them from the date of its execution."

In most of the States where controversies like the present have arisen, there are statutes which expressly authorize insurance upon the lives of husbands for the benefit of their wives, and place the married women, as to such policies, on the footing of *femes sole*. The primary object of such enactments is, simply, to remove the marital disability. If this were all, however, it might be asserted that, while the married woman may hold a certain property in the policy, so long as its existence continues, yet the husband, as the only contracting party known to the insurer, may, nevertheless, modify his contract, with the coöperation of the latter, even so as to withdraw, in effect, his voluntary bounty to the wife. But it is uniformly held that the transaction, if effectual for any purpose in the interest of the wife, creates an irrevocable trust. Hence, an assignment of such a policy, made by the husband and joined in by the wife under duress, will be held invalid. *Barry* v. *Assurance Soc.*, 59 N. Y. 587 In Bliss on Ins., sect. 318, it is stated as the general doctrine, that "a policy and the money to become due under it belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries; and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named." Surely, if he cannot transfer such an interest, it must be equally beyond his power to destroy it of his own volition.

It is urged for the plaintiffs, that the defendant's receipt of annual premiums on the substituted policy, after its knowledge that Mrs. Packard had not consented to the change, and its assurances to Mr. Packard that the change made was lawful and proper, must be held to estop the defendant against any assumption that the substituted policy is not binding. There is no estoppel in the case. The

only assurances conveyed by the defendant to Mr. Packard, in the acts referred to, were assurances, not of any fact or facts, but of legal conclusions.  Such intimations, either by acts or words, can constitute no foundation for an estoppel. *Brewster* v. *Striker*, 2 N. Y. 19.  No fact was represented, aside from its legal bearings, which was not quite as well known to Mr. Packard as to the defendant.  The case bears no analogy to that wherein a party having the right to waive a forfeiture induces another to believe that the forfeiture is, or will be, waived.  There, the waiver, or its refusal, is a matter of fact within the exclusive knowledge of the party holding the power to exercise the one or the other.

The judgment must be affirmed.  Judge BAKEWELL concurs; Judge THOMPSON not sitting.