GEORGE H. SHIELDS, Trustee, Appellant, v. LOUIS J. SHARP *et al.*, Administrators, Respondents.

St. Louis Court of Appeals, March 19, 1889.

Life Insurance: DEATH OF BENEFICIARIES. Where a father insures his life for the benefit of his children, and some of the beneficiaries die during his lifetime, after which he continues to pay the annual premiums as long as he lives, it is competent for him, with the consent of the insuring company to substitute other beneficiaries in the place of those who have died. But if he does not do so, he takes by the law of descents an inheritable share in the interests of the deceased beneficiaries, which share, at his death, vests in his personal representatives.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*George H. Shields*, for the appellant.

There are two theories on which the plaintiff as the trustee of Edward M. Johnson, is entitled to recover;

first, that there was no vested interest in the proceeds of this policy in either Venia or Anna at their deaths, and that the continuance, by the insured after their deaths to pay the premiums, was in effect taking out a new policy for the benefit of Bessie, Robert and Eddie, the other surviving children. *Gambs v. Ins. Co.*, 50 Mo. 44; *Kinnon v. Ins. Co.*, 23 Wis. 108; *Clark v. Durand*, 12 Wis. 223; *Ins. Co. v. Brandt*, 47 Mo. 420. In the case of *Loos v. Ins. Co.*, 41 Mo. 53, the court held that "the words legal representatives in their general or professional sense mean simply executors or administrators; but that the language used by the assured in the policy indicated that it was his intention in case of his untimely decease, to make some provision for the surviving members of his family, and not that the money arising from the policy should go to his executors or administrators to be administered on as ordinary assets. The changing of the language and the using of terms of different expression clearly implied that the money was intended for the benefit of the heirs or next of kin, and that it was not to be administered on as assets by the executor or administrator. We concede that the weight of authority in most of the states is in favor of holding that as soon as the policy is issued, an interest vested in the beneficiaries; but such is not the law in Missouri, or Wisconsin. *Gambs v. Ins. Co.*, 50 Mo. 44; *Clark v. Durand*, 12 Wis. 223; *Kernan v. Howard*, 23 Wis. 108; *Palmer v. Merrell*, 6 Cush. 56.

*Lionberger & Shepley*, for the respondents.

The interest of each of the children, Anna and Venia, was a vested one, and descended to their legal representatives. As one of such legal representatives James Johnson, Jr., took a share in the policy of insurance upon his own life. *Ins. Co. v. Palmer*, 42 Conn.

60; *Libby v. Libby*, 37 Maine, 359; *Hutson v. Merri-field*, 51 Ind. 24; *Chapin v. Fellowes*, 36 Conn. 132; *Succession of Kugler*, 23 La. Ann. 455; *Packard v. Ins. Co.*, 9 Mo. App. 469.

BIGGS, J., delivered the opinion of the court.

On the fourteenth day of June, 1869, the deceased, James Johnson, Jr., took a policy of insurance on his life for the sum of five thousand dollars and by the terms of the policy the amount was made payable to the children of the assured, viz: "Anna, Venia, Bessie, Robert and Eddie Johnson, share and share alike, his, her or their guardian, executors, administrators or assigns." The premiums, due on the policy, were paid by deceased and the contract of insurance was made in his name. One of the daughters, Venia, died in March, 1877, unmarried and without issue, and Anna, another daughter, died in 1881, unmarried and without issue. Both died intestate, leaving no debts. There was no administration on the estate of either. In March, 1883, Edward M. Johnson, one of the beneficiaries, called Eddie in the policy, with the consent of the company and the deceased, transferred his interest in this policy to plaintiff as trustee for the use and benefit of the wife and children of said Edward M. The assured James Johnson died in the city of St. Louis (his place of residence), on the twenty-fifth day of April, 1885, and the defendants were duly appointed administrators of his estate by the probate court of said city. After the deaths of Venia and Anna, the deceased continued to pay the premiums due on said policy and no change was made or attempted to be made as to the beneficiaries. Plaintiff as the trustee for the children of Edward M. Johnson, and also as attorney for the other beneficiaries, Bessie and Robert, claimed the entire amount of the funds of said policy. The defendants as administrators, claimed that when the policy issued, the deceased

daughters, Venia and Anna, became vested with a beneficial interest therein, and at their respective deaths, the interest of each therein descended and became vested in their heirs-at-law. That under the laws of descent, the father as one of their heirs, inherited an interest in said policy, which was not disposed of by him during his lifetime, and was due and payable to defendants as a portion of his estate. The insurance company declined to pay the money except upon the joint receipt of the adverse claimants, and to avoid litigation and delay, in the payment of the amount due on the policy, all parties interested joined in a receipt to the insurance company and the money was paid. The defendants refused to pay over that portion of the amount, which they claimed belonged to them as the personal representatives of the deceased. To recover the amount due the children of Edward M. Johnson out of the amount so retained by defendants, plaintiff, as their trustee, brought this suit, alleging in his petition the foregoing facts. Defendants interposed a general demurrer which was by the court sustained. Plaintiff refused to plead further and the court entered a final judgment on the demurrer and dismissed plaintiff's petition. The plaintiff brings the case here by appeal and assigns for error the action of the court in sustaining the demurrer to his petition and in entering final judgment against him thereon. The sole question presented by the record is whether the defendants as administrators of the estate of James Johnson, deceased, were entitled to any part of the proceeds of said policy.

In many jurisdictions it is held that when a policy of insurance is issued, the beneficiary therein named is vested with a beneficial or property interest therein, and that in case of the death of the beneficiary before that of the assured, that this interest passes, or is transmitted, to the heirs-at-law of the beneficiary. These authorities hold, that prior to the death of the assured, the interest

of the assured is not a mere expectancy or naked possibility, but is an expectancy coupled with a present interest, and that such interest at the death of the beneficiary, prior to the death of the assured, passes under the laws of descent and distribution; and it is further held that under no circumstances. can the right of the beneficiaries, or their heirs or legal representatives, be defeated by the action of the assured and the company, without the consent of the beneficiaries, or their heirs. *Continental Life Ins. Co. v. Palmer*, 42 Conn. 60; *Libby v. Libby*, 37 Me. 359; *Hutson v. Merrifield*, 51 Ind. 24; *Chapin v. Fellowes*, 36 Conn. 132. This rule is of general application *only* when the contract of insurance is made by the beneficiary and the premiums paid by him or some third person for him. When the original contract is made by the assured and in his name, and he pays the premiums, he may, after the *death* of the beneficiary, designate another beneficiary, with the consent of the insurance company, and thus divest the inchoate right or interest of the heirs or legal representatives of the deceased beneficiary. The exception to this rule is, where the deceased beneficiary held for value. This, we think, to be the law in this state. But there is an apparent confusion in the decisions of this court and the supreme court, and counsel for the appellant contends that there is a direct conflict between the decision of this court in case of *Packard v. Ins. Co.*, 9 Mo. App. 476, and the decision of the supreme court in case of *Gambs, Adm'r, v. Ins. Co.*, 50 Mo, 44. But when the facts in each particular case are carefully looked into it is quite apparent that the conflict does not exist. The language of the court in the *Packard case* must be applied and confined to the facts *in* that case. Wherein the two cases are distinguishable will appear in the discussion of the legal question involved in this case.

There can be no question as to the validity of the original contract of insurance in this case. The fair

presumption is, although it does not appear affirmatively, that the children, at the time the policy was issued, were minors. As such, they had such an insurable interest in the life of their father as to take the policy out of the category of "wagering contracts." They had a right to look to their father for maintenance and the law compelled the father to support them during their minority. Upon the same principle, the law, in the absence of any statute authorizing it, would sustain a policy of insurance on the life of a husband for the benefit of the wife. *Gambs v. Ins. Co., supra.*

After the death of Anna and Venia, James Johnson continued to pay the premiums on the policy up to his death, and the contention of appellant is, that the presumption arises that the deceased, in so doing, intended such payment to be for the use and benefit of the surviving beneficiaries, and that he is sustained in this by case of *Gambs v. Ins. Co., supra.*

In the *Packard case*, Packard had taken out a policy of insurance on his life for the benefit of his wife, and *during the lifetime* of his wife he undertook to defeat or destroy her interest in the policy. This court held that it could not be done without her consent. The court said : " When it is once settled that a life policy is valid and enforceable on behalf of the beneficiary named therein, there seems no difficulty in determining that the interest of such beneficiary cannot be disturbed, without his consent, by the mere act of the person insured, coöperating with the insurer."   *   *   .   * " But it is uniformly held that the transaction, if effectual for any purpose in the interest of the wife, creates an irrevocable trust."

It must be borne in mind that in that case the wife was alive, and contesting the right of the husband to deprive her of her rights under the policy. She was still his wife and entitled to his support and his protection, and although the language of the court is quite

broad, yet as suggested, in applying the language used, we must not lose sight of the facts. We think that the court very properly decided and *only* decided, that during the *life* of the wife, she could not, by any action on the part of the husband and the company, be deprived of her beneficial interest in the policy. And we think the same rule would apply here, where minor children are the beneficiaries. The facts in the *Gambs case* were entirely different. In that case the first wife of the assured was named as the beneficiary in the policy. The husband made the original contract of insurance and paid all of the premiums out of his own funds. After the death of the wife, the assured continued to pay the premiums for several years, until his marriage the second time. He then, with the consent of the company, *endorsed* on the policy a *memorandum*, by which the proceeds of the policy were *directed* to be paid to the second wife. A short time afterwards, the husband died, and the insurance company paid the money to the second wife, in accordance with the memorandum endorsed on the policy. Gambs was the administrator of the estate of the first wife, and he sued the insurance company for the money, claiming that his intestate had a vested interest in the policy, which could not be disturbed by any act of the assured. The court held that the assured had the right to make the change and that the money was properly paid to the second wife. This decision was made in reference to a policy of insurance issued before our statute was enacted permitting policies to be issued in the name of and to the separate use of the wife, but we don't think the decision could have been affected on this question, even had the statute been in force. Because the court cites and approves the case of *Kerman v. Howard*, 23 Wis. 108. That court said: "But when the husband effects a policy on his own life for the benefit of his wife, pays the premium and survives her,

we do not think the statute intended to deprive him of all power over the policy. Suppose he wished to change the policy in favor of some other person, could he not do it with the consent of the company ? He might wish to use or assign the policy as a means of credit or security. He might not wish to continue the payments by which the policy was kept alive and thus abandon the policy altogether. Would he not have the right to discontinue payment of the premiums and let the policy lapse? It seems to us that he would, or that he might *bequeath or assign the beneficial interest* in the policy as he might think proper." In the *Gambs case* the supreme court said: "But it does not follow that the action of the husband, after the death of the wife, must be held to have been for the benefit of her representatives. The only ground on which the policy could be sustained when issued is the fact that the wife had a right to look to the husband for support. It was taken out for the purpose of securing her support after his death. The premiums were paid by him and the whole thing was instituted and carried on for this laudable purpose. This object being forever lost, was the husband bound to continue the policy for the benefit of her representatives ? Could he not surrender it, or by failing to pay further premiums, let it lapse, or could he not, with the consent of the company, change the beneficiaries ? He must be held to have had that right. It amounts to the surrender of the old policy and the issue of the new one. Every payment made after the *change* was in the interest of the present wife."

We think that this doctrine would apply to a policy like the one under consideration. The policy in the first instance is upheld on the idea that the minor children of the deceased had the right to look to their father for support, and to that extent they had an insurable interest in his life. After the death of Venia and Anna, the continued payment of the premiums by

the father was not necessarily in the interest of the heirs or personal representatives of the deceased daughters. The appellant contends that the continued payment by the father, after the death of the daughters, creates the presumption that it was done in the interest of the surviving beneficiaries. We think the *Gambs case* requires more than this. In order to divest the inchoate interest of the heirs of the deceased beneficiaries, it requires some affirmative action on the part of the assured, by and with the consent of the company, by which it appeared that the policy was in fact continued in the interest of the other children. We think James Johnson, with the consent of the company, could have made this change, under the authority of the *Gambs case.* But having failed to do so, at his death, the interest of the deceased daughters passed absolutely to their heirs. The deceased was one of the heirs of the daughters, and the authorities seem to sustain the position that in such a case, his personal representatives would have the right to demand and receive his portion of the proceeds of said policy, and the same should be administered as other assets belonging to his estate.

Our conclusion is, that the demurrer was properly sustained. The judgment is, therefore, affirmed, with the concurrence of the other judges.